IN RE INTEREST OF Z.D.D. AND N.J.D., CHILDREN UNDER 18
YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. T.D., APPELLANT.
430 N.W.2d 552

Filed October 21, 1988.   No. 88-380.

Richard C. Witt, of Shoemaker & Witt, for appellant.

James L. Hatheway, Adams County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

T.D., the father of two boys born September 7, 1980, and June 18, 1983, has appealed from the order of the county court terminating his parental rights to the children. The mother of the children voluntarily relinquished her parental rights January 13, 1988. Her rights are not an issue in this appeal.

The family problems leading up to the petition for termination began in June 1985, when the father and the mother separated. The father had taken his alcoholism "to its umpteenth degree" and did not know where the children were during the summer. He testified that he knew the mother had taken the children to Cedars Home for Children, but during the summer she would take the children out for a couple of days at a time or on weekends. He testified that he saw the children a couple of times at the babysitter's during the summer of 1985, but intimated that it was difficult to see the children because the mother had requested a restraining order against him.

In March 1987, the parents were divorced. The father was granted temporary custody of the children during the pendency of the divorce proceedings, and they lived with him until December 1985, when the boys were placed in Cedars Home so that he could go into a 30-day inpatient alcohol treatment program at St. Gabriel's. Although the father was released from inpatient treatment in March of 1986, the children remained in Cedars Home from December 1985 to June 1986.

The father lived with his parents until October 1986. He testified that he had to "get on [his] feet" before he could take the boys. In the summer of 1986, the mother contacted him and obtained custody of the boys. Shortly after getting the boys, she moved to Hastings, Nebraska, with them. The father stated that he visited the boys two or three times during the fall of 1986.

On November 24, 1986, the county attorney filed a petition to place the children in protective custody with the Department of Social Services (DSS). The petition alleged the children were

homeless through no fault of their parents. The father appeared at the hearing held December 18, 1986, and admitted the allegations of the petition. At that time, the children were adjudicated to be children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 1986), and were placed in a foster home in Hastings on December 10, 1986.

A case plan for reuniting the parents with the children was adopted by the county court on April 16, 1987. Although the father did not attend this hearing, his attorney did. The plan required the father to maintain biweekly phone or mail contact and weekly visits with the children. He was to pay $50 a month child support, and maintain a residence for 6 months. He was to provide DSS with the names of physicians who could care for the boys, schools which the boys would attend, and day-care providers. He was to maintain contact with the case manager, advising her of any changes in residence or job.

The father complied with none of those conditions of the plan. He called the caseworker only once, on January 28, 1988. He called a DSS supervisor on December 31, 1987, to request a visit with his children. A home study was not done, and the authorizations for the release of information were not signed. The only requirement of the case plan which the father accomplished was maintaining sobriety.

A hearing was held October 9, 1987, to review the progress of the reunification plan. The father did not attend the hearing. A case plan was adopted which was much the same as the April case plan. The father was to obtain suitable employment for the support of the children, the job to be not less than 35 hours a week, with earnings sufficient to meet the needs of the family. He was to prepare a budget indicating he had sufficient funds for food, clothing, shelter, and other expenses, and pay $100-a-month child support. The father and the boys were to attend family counseling, and he was to attend a parenting class and receive an assessment of his skills. He was to attend four AA meetings a week and submit proof of his attendance to DSS.

The father had a copy of each of the case plans but failed to comply with the conditions. He did not have full-time employment from the time the plans were adopted to the time

of trial. He did not submit a budget. In February 1988, he paid $50 toward support of the children.

The father stated the plans overwhelmed him, but he did not ask his attorney or the court to change the plans. He did not attend the hearings when the case plans were adopted.

The father visited the children in January of 1987. He did not visit the children again until February 20, 1988. According to the foster family, the boys did not receive phone calls from the father, nor cards or presents on their birthdays.

The father was in Hastings on July 22, 1987, but saw only his ex-wife. He testified that it was too late in the evening to see the boys, and he had to be in Grand Island the next day at 8 a.m. He testified that he called the mother in July of 1987 to see the boys, but she said the boys were on their way to Mississippi for a vacation. The foster father testified that the boys were on vacation with his family for 2½ weeks in July of 1987.

The amended supplemental petition to terminate the father's parental rights was dated October 27, 1987. Since he could not be located, the father was served by publication in November of 1987.

The father testified that he did not contact his children for nearly a year because he did not have the money to go to Hastings and he could not afford long-distance phone calls to DSS or the boys. When asked why he did not send cards or letters, he said, "The only thing I can say on that one is I worked with a counselor on some guilt issues, and the frustration of the situation, the condemnation of myself at one time in regards to this . . . ."

The father testified that another reason why he was unable to visit the boys was his job as a traveling photographer, which he held from May to October 1987. He said there were weeks when he would work 1 day, and weeks when he would work 5. He made about $700 a month at that job, but quit because it did not pay enough and was interfering with his recovery from alcoholism. He had a part-time job at the time of trial, but it was "up in the air" and a very "unstable" situation. His wage was $3.75 an hour. He stated that he did not pay child support because he "didn't pay attention to the priority of that."

At the time of trial, the father was not requesting custody of

the children, but merely that they be placed in a foster home in Omaha, so he could have greater contact with them. He testified that he was not financially able to provide a stable environment for the children at the time of trial, but if he had a regular 8-to-5 job and the children lived in foster care in Omaha, he could visit the children more often.

The county court found that the State had met its burden of proof for termination of parental rights based on Neb. Rev. Stat. § 43-292(1), (3), and (6) (Reissue 1984). Those subsections state that (1) the child was abandoned for 6 months or more immediately prior to the filing of the petition; (3) the parent, being financially able, has willfully neglected to provide for the child; and (6) reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination that the child is one as described in § 43-247(3)(a). The trial court further found that the father "made no effort whatsoever to try to comply with [the] Court's previous case plans and it would be detrimental to the [children] to continue this matter any further." The father's motions for new trial and for visitation (pending appeal) were denied.

The father has assigned as error that (1) the State has not met its burden of proof by clear and convincing evidence that his parental rights should be terminated pursuant to § 43-292(1), (3), and (6); (2) the court erred in finding that it was in the best interests of the children to terminate the parental rights of T.D.; (3) the court erred in refusing to grant the request to place the children in an Omaha foster home and in approving case plans which were not reasonable under the circumstances; and (4) the court erred in denying the request for visitation pending trial and pending appeal.

In an appeal from a judgment terminating parental rights, the Nebraska Supreme Court tries the factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the trial court; however, where the evidence is in conflict, the Supreme Court considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another.

*In re Interest of J.A. and T.A.*, 229 Neb. 271, 272, 426 N.W.2d

277, 277-78 (1988).

The issue in this case is, taking into consideration the best interests of the children, whether the father's parental rights were properly terminated. The trial court based its decision on three grounds: (1) The father was a person referred to in § 43-292(1), (3), and (6); (2) it was in the best interests of the children to terminate his parental rights; and (3) the father did not comply with the case plan.

The evidence is uncontroverted that the father did not see, call, or send letters or cards to his children from January 1987 until after the petition for termination was filed in October 1987.

In this case, the father made no attempt to contact the children, though he contacted his ex-wife in Hastings. His excuse for not contacting the children was the lack of money to drive from Omaha to Hastings. He did not contact DSS to determine if financial assistance was available.

Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child. *In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982). At the time the termination petition was filed, the father had not seen his children for almost 10 months. This lack of contact, with the other evidence, satisfies the abandonment requirement of § 43-292(1).

The evidence at trial shows that, apparently, the father had no intention of contacting his children. Even though his traveling photographer job kept him busy only 1 day a week in some weeks, he did not use that free time to call, see, or write a letter to his boys. He spoke to his ex-wife on the phone, but did not call his boys. When he finally realized that his failure to contact the children could result in the termination of his parental rights, he contacted the foster parents and DSS about a visit.

With respect to the father's failure to comply with the case plans for reunification of the family, the evidence is clear that the father did nothing to comply with the case plans, except maintain sobriety. Under the April plan, the father was to maintain his sobriety; visit weekly and call or write biweekly;

pay $50 a month for child support; maintain a residence for 6 months; have a home study done; provide the caseworker with the names and addresses of doctors for the boys, schools, and day care providers; contact the caseworker if he changed jobs or moved; and sign an authorization for release of information. Under the April plan, he only maintained sobriety. Although he urges that this plan was not tailored to fit his needs, he did not see fit to participate in its formulation. He did not attend the April hearing, did not express his wish that the children be given counseling, and did not tell the court about his problems with paying child support and visiting the children. The plans tended to correct, eliminate, or ameliorate the situation or condition on which the adjudication was made.

Contact with the children would show the father cared about the children and wanted them; support money would demonstrate the priority the father placed on providing for his children; and maintaining a proper home and DSS' home study would help the father prove he would be able to take custody of the children in an appropriate environment. Contact with DSS allows DSS to track his progress as a parent and provider, and allows DSS to provide the father with information about his children. Information about doctors and schools and day care may not be as vital to the goal of reunification, but his failure to take the simple step of finding out which school his sons would attend and who would care for them if they were sick or needed babysitting indicates his lack of commitment to the children. As we stated in *In re Interest of J.W.*, 224 Neb. 897, 904, 402 N.W.2d 671, 676 (1987),

> [I]t was her failure over a period of 16 months to cooperate with and take advantage of the court's and support workers' efforts and services, as well as her failure to visit J.W. The evidence shows that the infrequency of her visits resulted in J.W.'s being uncomfortable when visits did occur.

The children in this case have been shifted around from the Cedars Home and from father to mother since the summer of 1985. They were placed in foster care in December 1986, where they remained until the trial in March of 1988. The termination petition was filed in the fall of 1987, more than 2 years after the

beginning of these problems. As this court has stated in numerous opinions, "A child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." *In re Interest of D.C.*, 229 Neb. 359, 367, 426 N.W.2d 541, 546 (1988).

In *In re Interest of D.C., supra* at 366, 426 N.W.2d at 545, this court held that "where parents are unable or unwilling to rehabilitate themselves within a reasonable time, the best interests of the child require that parental rights be terminated."

The record supports the refusal to place the children in foster care in Omaha and the decision to deny the father visitation after his parental rights had been terminated. After parental rights have been terminated, visitation while an appeal is pending would not be in the best interests of children who already have been in limbo for months or years.

The request for visitation during the holiday season of 1987 came after the petition for termination had been filed, and after over 10 months of no word from the father. The denial was supported by the recommendation of DSS.

The request for placement of the children in Omaha came after the termination petition had been filed. Apparently, the father finally realized that he might lose his children for failing to show more interest in them. The evidence does not show that foster placement in Omaha would have been in the best interests of the children. In determining placement for children, the Nebraska Legislature has provided DSS with the authority to make decisions in that regard. "The Department of Social Services shall have the authority to determine the care, placement, medical services, psychiatric services, training, and expenditures on behalf of each juvenile committed to it." Neb. Rev. Stat. § 43-284 (Supp. 1987). DSS must report to the court within 30 days about a child committed to DSS, and must provide a progress report every 6 months. At the time the father's original request to place the children in Omaha was made, the children's mother was living in Hastings, where the children had been placed, and the children had been living with the foster family for nearly a year. The DSS representative testified that the children's home with the foster family was an excellent placement and that it would not be good for the

children to be uprooted and placed in Omaha.

The evidence is clear and convincing that it was in the best interests of the children that the father's parental rights be terminated.

The judgment is affirmed.

AFFIRMED.