IN RE INTEREST OF A.G.G., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. B.K.S., APPELLANT.
433 N.W.2d 185

Filed December 23, 1988.   No. 87-985.

George E. Clough for appellant.

John H. Marsh, Deputy Lincoln County Attorney, for appellee.

Patrick B. Hays, guardian ad litem.

HASTINGS, C.J., WHITE, CAPORALE, and FAHRNBRUCH, JJ., and REAGAN, D.J.

HASTINGS, C.J.

The mother appeals from the judgment of the county court for Lincoln County, sitting as a juvenile court, which terminated the parental rights to her son. Her assignments of error include lack of proper notice, lack of jurisdiction in the court, and insufficiency of the evidence to sustain the judgment. We affirm.

The minor child was born on April 29, 1981. The mother was unmarried at that time. Prior to marrying the mother, the putative father legally acknowledged paternity, but at the termination hearing, he denied such paternity.

When the son was approximately 3 months old, he was removed from the mother's custody. In September of 1981, the trial court placed custody of the child with the county welfare department for placement in a suitable foster home. The mother was allowed supervised visitation.

In December of 1981, pursuant to stipulations agreed to by the county attorney, the mother, and the guardian ad litem for the child, the court retained legal custody and control in county welfare, but gave physical custody of the child to the mother.

The stipulations included a rehabilitative plan for appellant, which the court also accepted. The mother was unsuccessful in completing the rehabilitative plan.

Between June of 1982 and December of 1983, the child was removed from the mother's custody, placed again with the county welfare department, and then eventually returned to the custody of the mother, under the supervision of the Nebraska Department of Social Services.

In the spring of 1984, the mother, living with, but not married to, the child's acknowledged father, became concerned that the father was sexually abusing the 3-year-old child. After the mother was informed that the father was sexually abusing the child and performing "golden showers" with him, the mother, the father, the child, and the mother's other children (not involved in the termination proceedings) moved to California. In July of 1984, trial was set in a California court relating to alleged sexual incidents occurring between the father and the child. The mother and the father then disappeared from California, and it was suspected that they had returned to North Platte. The child and his mother's other children did return to North Platte and were known to be living with the mother's mother.

Based on the foregoing information, the county attorney obtained an order of detention on July 13, 1984, and the child was detained in the temporary custody of the Nebraska Department of Social Services. After a hearing in August of 1984, the child was placed in the custody of the Department of Social Services for placement in a suitable foster home.

The mother and the acknowledged father were married on September 30, 1984. A second rehabilitative plan was developed for the mother and her newly acquired husband. The mother was no more successful in completing the second plan than she was in completing the first.

For Easter of 1985, the mother was allowed to take the child for an overnight visitation in North Platte. However, she took him to Kansas City, where he remained with her for several months. The mother was arrested in Missouri, apparently on a warrant issued in Nebraska. The child was returned to Nebraska and placed in foster care once again. The mother

failed to appear for arraignment in the district court for Lincoln County on charges of child abduction. She has left the state and refuses to return.

On June 9, 1987, the county attorney filed a motion to terminate the parental rights of the mother on the basis of abandonment and neglect. See Neb. Rev. Stat. § 43-292(1) and (2) (Reissue 1988). Personal service on the mother was attempted at her last known addresses in Nebraska, California, and Tennessee, to no avail. Finally, pursuant to Neb. Rev. Stat. § 43-268(2) (Reissue 1988), service was accomplished through publication in the North Platte Telegraph. Notice was published on August 12, 19, and 26.

The attorney appointed to represent the mother's interests in her absence moved to dismiss the termination proceedings for lack of jurisdiction due to the absence of proper notice. At the termination hearing held on September 1, 1987, the trial court heard evidence on the issue of notice. Becky Ridenour, a Department of Social Services Child Protective Services worker assigned to the child's case, testified that she spoke with the mother over the phone during August. Although the mother informed Ridenour that she was aware of the termination proceedings, they did not discuss the grounds upon which termination was being sought. The trial court overruled the motion to dismiss.

In an order filed on October 19, 1987, the trial court terminated the mother's parental rights. The order contained no specific finding that there was clear and convincing evidence to establish grounds for the termination, or a finding that it would be in the child's best interests to terminate the mother's parental rights.

However, in an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the trial court; nevertheless, where the evidence is in conflict, the Supreme Court considers and may give weight to the trial court's observation of the witnesses and acceptance of one version of the facts rather than another. *In re Interest of D.C.*, 229 Neb. 359, 426 N.W.2d 541 (1988); *In re Interest of M.R., J.R., and N.R.*, 228 Neb. 47, 420 N.W.2d 924 (1988).

Therefore, on a de novo review, this court may make the appropriate and necessary findings if in fact they are supported by the record.

We deal first with the issue of notice. The record discloses that the mother has been present personally and by counsel at most, if not all, of the various hearings held in this matter, commencing with the adjudication hearing held on September 8, 1981, and continuing through a review hearing of April 21, 1986. Therefore, there is no question as to the court's jurisdiction over the mother. However, Neb. Rev. Stat. § 43-267(2) (Reissue 1988) requires

> Notice of the time, date, place, and purpose of any juvenile court hearing subsequent to the initial hearing, for which a summons or notice has been served or waived, shall be given to all parties either in court, by mail, or in such other manner as the court may direct.

The mother had been represented by the public defender until July 22, 1982, when he was allowed by order of the court to withdraw because she refused to continue being represented by that office. Sometime after that, but at least by August 9, 1982, the mother was represented by what we will in this opinion refer to as first appointed counsel. He continued in that capacity until June 16, 1987, when he filed a motion to withdraw because "he received a phone call from [the mother] within the last 90 days but he is totally unaware of her current whereabouts and has no ability to communicate with her concerning Motion to Terminate Parental Rights filed herein." That motion was granted as of July 14, 1987. Present counsel was appointed sometime before July 6, 1987. On that date, present counsel appeared by motion as "attorney appointed to represent [the mother]" and moved to dismiss the June 9, 1987, filed motion of the county attorney to terminate parental rights. By court order filed July 16, 1987, the motion to dismiss was overruled, "except as to paragraphs 7 and 8, which it sustains."

Paragraph 7 of the motion to dismiss alleges "no proper and sufficient showing has been made for the order for publication entered by the Court on June 9, 1987," and paragraph 8 provides in part that "no proper and sufficient order for

publication exists within the record of the Court concerning the motion to terminate parental rights." In spite of her continuous representation by one court-appointed attorney or the other, the record does not disclose that following the April 21, 1986, hearing the mother was ever again personally present in court.

The order for publication referred to in the mother's motion is a document entitled "Order for Publication." However, the body of that order simply appears as follows:

> You are hereby notified that a hearing to terminate the parental rights of [the mother] and adoptive father [name of father] will be held in this Court commencing at 9:00 o'clock a.m. on the 14th day of July, 1987.
>
> Dated this 9th day of June, 1987.
>
> BY THE COURT:
>
> /s/ _____
>
> County Judge

There then appear in the record copies of envelopes and receipts for certified mail addressed to the mother at addresses in Compton and Anaheim, California, and Bartlett, Tennessee, all returned unsigned and unclaimed.

The day after the partial sustaining of the motion to dismiss, July 17, 1987, a summons was issued to the sheriff of Shelby County, Tennessee, for service on the mother to inform her that a hearing would be had on a motion to terminate parental rights on September 1, 1987. Instructions written on the summons were to serve the mother at an address in Memphis, Tennessee. That summons was returned by the sheriff on August 21, 1987, unserved because "AFTER diligent search and inquiry [the mother] is Not to be found in my County."

An affidavit of the county attorney for Lincoln County was filed on August 6, 1987, which recited the fact that a summons had been issued and service attempted at the last known address of the mother in Bartlett, Tennessee, but that it was returned unserved and that after diligent investigation and inquiry the affiant did not know the address or whereabouts of the mother. There then appears an "Order for Publication" dated August 6, 1987, in the same form as the previously described order of June 9.

There is a proof of publication with a copy of the published

notice which appears to be in proper form. There is a receipt for certified mail addressed to the mother at the same Bartlett, Tennessee, address previously used, marked "Restricted Delivery," but signed for on August 13, 1987, by Tracy Bryant. A similar receipt with the same address and same restriction was returned to the court receipted for by Sandra Bryant. Nowhere in the record does the identity of Tracy or Sandra Bryant or their relationship, if any, to the mother appear. Neither is there any indication by affidavit or otherwise what was mailed and obviously received by someone. There is no affidavit of mailing, or not mailing, of the copy of the published notice.

Proceedings to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process. *In re Interest of J.K.B. and C.R.B.*, 226 Neb. 701, 414 N.W.2d 266 (1987). This would apply to notice requirements. Once the court acquires jurisdiction over the person, as it did in this case, due process still requires that such person be afforded reasonable notice of further proceedings. However, once having appeared, and having the benefit of counsel, that person has some obligation to keep counsel and the court informed of his or her whereabouts. This the mother failed to do. Her first appointed counsel, in his June 16, 1987, motion to withdraw, recited that "he received a phone call from [the mother] within the last 90 days but he is totally unaware of her current whereabouts and has no ability to communicate with her concerning Motion to Terminate Parental Rights filed herein." The mother mailed a signed document relinquishing her son for adoption by the son's great-uncle. That document was enclosed in an envelope postmarked from Denver August 5, 1987, with copies mailed to, among others, the deputy county attorney and the mother's present appointed counsel. However, again she failed to furnish these people with an address. At a hearing held on September 1, 1987, on the mother's motion to dismiss filed by her present counsel, the Child Protective Services worker, Becky Ridenour, testified that she had last visited with the mother in person on April 6, 1986. Further, she said that she had had many telephone conversations with the mother during 1987, the most recent of which was in August. In response to a question as to whether the mother had at that time

given her an address at which she could be reached, she answered in the affirmative and that she had two addresses, the one in Bartlett, Tennessee, and the one in Compton, California, both previously mentioned. However, she testified that she had no idea whether the mother was residing in either California or Tennessee at the time of the August telephone conversation. In addition, Ridenour testified that the mother had indicated to her over the telephone that she was aware of the proceedings to terminate her parental rights to be held that day—September 1, 1987.

Later on in that same hearing, Ridenour testified that she was the case management worker for the child involved here and that she worked on visitations by the parents and with the reunification planning. She also testified that her first personal contact with the mother was March 19, 1986, and that the mother left no forwarding address nor telephone number, although one was requested of her.

From April of 1986, Ridenour had no contact with the mother until April 14, 1987, which contact was by telephone. The mother requested pictures and information about her son, but this information was not forwarded because the mother refused to give an address. There were telephone conversations on April 28, 1987, when the mother discussed the possibility of relinquishing her parental rights; on July 13, 1987, when the mother said she would not be attending the termination hearing that was set for July, although she was aware of it; on August 3, 1987, when the mother requested information about her son; on August 7, 1987, in which the conversation was generally about her son's welfare and the termination hearing that was being scheduled; and finally on August 19, 1987, in which the mother stated that she understood the termination hearing would take place, and she inquired as to whether her signed relinquishment to the great-uncle had been received. During none of those conversations, according to Ridenour, did the mother ever indicate any desire to personally visit with her son, to speak to him over the phone, or to write him any letters. Nonetheless, Ridenour on numerous occasions requested the mother to come and meet with her son, but she always stated that she could not return to the State of Nebraska.

Although the record, with little effort, could have been made more understandable and unequivocal by the presence of a specific order of the court "permitting" service by publication, it can fairly and reasonably be inferred from the facts set forth above that such authorization was actually given. The showings made demonstrating the inability to find the mother's whereabouts were adequate.

We also do not overlook the fact that the mother's counsel, by appearing on her behalf and moving the court for specific relief, normally would be held to have entered a general appearance and waiver of notice. *Eliason v. Devaney*, 228 Neb. 331, 422 N.W.2d 356 (1988); *State v. Wedige*, 205 Neb. 687, 289 N.W.2d 538 (1980). However, this must assume authority of counsel to undertake such action. We are not prepared to say that an attorney appointed on the initiative of the court, which attorney has had no contact with the client, could be said to possess authority to waive any of the client's rights.

Nevertheless, in this instance there are in the record return receipts for certified mail, acknowledging receipt of something. We have testimony relating to statements of the mother that whether she in fact received notice of the hearing through that method, she was in fact aware of the time and place of the hearing.

We believe that from a totality of the circumstances the record discloses proper publication of notice as well as actual notice of the final hearing.

The basis of the court's termination order was two-fold: abandonment and neglect. In the case of *In re Interest of Z.D.D. and N.J.D., ante* p. 236, 241, 430 N.W.2d 552, 555 (1988), we said: "Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." We continued on, with the following language:

> "A child cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity." . .
> .
>    . . . "[W]here parents are unable or unwilling to rehabilitate themselves within a reasonable time, the best interests of the child require that parental rights be terminated."

*Id.* at 243, 430 N.W.2d at 556.

We have defined willful abandonment as the intentional withholding from the child, without just cause or excuse, by the parent, of his or her presence, care, love, protection, maintenance, and the opportunity for the display of filial affection. *In re Interest of R.A.*, 226 Neb. 160, 170, 410 N.W.2d 110, 117 (1987), contains this language: *"A voluntary departure from the state may be viewed as an abandonment of one's children* and cannot be used as an excuse for the impossibility of compliance with a court-ordered plan of rehabilitation." (Emphasis supplied.) The question of abandonment is largely one of intent, to be determined in each case from all the facts and circumstances. *In re Guardianship of Sain*, 217 Neb. 96, 348 N.W.2d 435 (1984).

As previously stated, around Easter of 1985, the mother, after obtaining permission for an overnight visitation, took her son without authorization to Kansas City, Missouri, where he remained for several months. She was arrested in Missouri, returned to Nebraska, and arraigned in the district court for Lincoln County on charges of child abduction. The mother failed to appear for arraignment. The child was also returned to Nebraska.

The mother left the State of Nebraska and has refused to return, claiming she is in fear of being arrested. Although it is unclear from the record just when she left the state, there is some evidence that she attended a review hearing on April 21, 1986. The last personal contact with anyone in the State of Nebraska documented by the record was in April of 1986. After that, in spite of telephone calls originated by the mother from outside the state, during which authorities urged her to come visit her son and to attend the hearing on the motion to terminate her parental rights, she refused to do so.

In those various telephone conversations with Ridenour, the mother never said that she wanted to personally visit with her son, never said she wanted to call him, never said she wanted to write to him, and never stated a desire to contact her son. She insisted that she could not return when specifically asked to meet with her son, but did say if she could return, she would like to do so to say goodbye to him.

The mother has both abandoned and neglected her son. She has continuously failed to discharge the duties of parental care and protection. She has denied her son her care, protection, affection, love, guidance, and the opportunity to display filial affection. Any kind of family relationship between appellant and her son is totally absent. All of this has been established by clear and convincing evidence. The best interests of the child will be served by termination of parental rights.

The adjudication of the juvenile court is affirmed.

AFFIRMED.