IN RE INTEREST OF J.M.D., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. R.D., APPELLANT.

446 N.W.2d 233

Filed September 29, 1989.    No. 88-1068.

Roger R. Holthaus and Patrick T. Riskowski for appellant.

Dean Skokan and Brian L. Halstead for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

R.D., the mother of J.M.D., born June 22, 1987, has appealed from the judgment of the county court terminating her parental rights to the child.

The child was born in a motel in Fremont, Nebraska, and removed to the Dodge County Memorial Hospital by the

Fremont Fire Department rescue squad. Temporary custody of the child was given to the Department of Social Services (DSS) by a detention order made June 26, 1987. The child has been in foster care continuously since that time. The father of the child relinquished his parental rights on August 30, 1988.

The petition filed June 26, 1987, alleged that the child lacked proper parental care by reason of the fault or habits of her parents, who neglected or refused to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child, or that the child was in a situation dangerous to life or limb.

At the detention hearing that same day, Jay Moss, protective services worker for DSS, testified that the child was born in a bathroom at Berry's Motel in Fremont. R.D. had never reported to DSS that she was pregnant. When questioned at an evaluation hearing in another proceeding on March 18, 1987, R.D. denied that she was pregnant. The record shows that the mother had denied to DSS that she was pregnant and had received no prenatal care. However, she had planned to have her husband's sister adopt the child, and custody papers had been prepared. When the rescue squad arrived at the motel, she told one of the members of the squad that he should take the child because she was going to give the child away anyway.

The appellant's parental rights to her two older children were terminated on December 31, 1987. All three children are now together in the same foster home.

The supplemental petition to terminate the parental rights of the appellant which was filed June 29, 1988, alleged that the appellant had abandoned the child for a period of 6 months or more immediately prior to the filing of the petition, as provided in Neb. Rev. Stat. § 43-292(1) (Reissue 1988), and that it was in the best interests of the child that the appellant's parental rights be terminated.

It is unnecessary to set out the evidence in detail. The record shows not only an inability to properly care for the child, but a lack of interest in the welfare of the child. The appellant furnished no support for the child, and visitation was sporadic or nonexistent. The appellant visited the child in July 1987 when the child was hospitalized with an infection, but at the time of

the hearing on the supplemental petition to terminate parental rights on September 21, 1988, the appellant had not visited the child since December 29, 1987.

When Sharon Davis, a Child Protective Services worker, called the appellant on June 24, 1988, to notify her of the June 27 evaluation hearing and asked about visitation, the appellant changed the subject to relinquishment and the possibility of adoption. Further, the appellant was angry that she had been called and told Davis to never call again and to mind her own business.

Although the appellant attempted to excuse her failure to visit the child on the ground that she had no transportation, the record shows that was not true.

Between February and March 1988, the appellant lived in Fremont with her parents and drove to Omaha to work. She did not see the child during that time and later conceded that her problems with visitation at that time were not caused by lack of transportation, but with having her "head screwed up." She spent 30 days in jail from January 12 through February 12, 1988, for driving under suspension, second offense, and 7 days in jail in March 1988 for third offense driving under suspension. After that, she moved to Omaha and worked at a restaurant, the Chartroose Caboose. She was afraid to return to Fremont because there was a bench warrant for her arrest. She further testified that she went to see her husband on weekends in Bellevue by taking a bus. She had to ask for time off from work to do this, but she did not ask for time off or take a bus to Fremont to visit her child.

Abandonment has been defined as an intentional withholding from the child, without just cause or excuse, by the parent of the parent's presence, care, love, and protection; maintenance; and the opportunity for the display of filial affection. *Young v. Young*, 588 S.W.2d 207, 209 (Mo. App. 1979), cited in *In re Application of S.R.S. and M.B.S.*, 225 Neb. 759, 408 N.W.2d 272 (1987).

"The parental obligation is a positive duty which encompasses more than a financial obligation. It requires continuing interest in the child and a genuine effort to maintain communication and association with that child." *In re*

*Adoption of Simonton*, 211 Neb. 777, 784, 320 N.W.2d 449, 454 (1982). "Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." *In re Interest of Z.D.D. and N.J.D.*, 230 Neb. 236, 241, 430 N.W.2d 552, 555 (1988).

The finding by the trial court that the appellant "had neither established nor maintained any form of meaningful contact or desire to maintain or develop a relationship with the infant child from the child's birth" and had abandoned the child is supported by clear and convincing evidence. It is in the best interests of the child that the parental rights of the appellant be terminated.

The judgment is, therefore, affirmed.

AFFIRMED.