IN RE INTEREST OF K.M.S., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. E.S., APPELLANT.

463 N.W.2d 586

Filed November 30, 1990.    No. 90-030.

Audrey S. Ellison for appellant.

Ronald L. Staskiewicz, Douglas County Attorney, and Elizabeth G. Crnkovich for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

E.S., the natural father of K.M.S., a minor, has appealed from the order of the separate juvenile court, which terminated his parental rights to the minor child. The father assigns as error that the court erred in finding that there was sufficient clear and convincing evidence to support termination of the father's parental rights and that the minor was a child within the meaning of Neb. Rev. Stat. § 43-292(1) (Reissue 1988), one whose parents have abandoned the juvenile for 6 months or more immediately prior to the filing of the petition. We affirm.

"In an appeal from a judgment terminating parental rights, the Supreme Court tries factual questions de novo on the record, which requires the Supreme Court to reach a conclusion independent of the findings of the trial court, but, where evidence is in conflict, the Supreme Court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. [Citations omitted.] In the absence of any reasonable alternative and as the last resort to dispose of an action brought pursuant to the Nebraska Juvenile Code . . . termination of parental rights is permissible when the basis for such termination is proved by clear and convincing evidence. [Citations omitted.] A juvenile's best interests are one of the primary considerations in determining whether parental rights should be terminated as authorized by the Nebraska Juvenile Code."

*In re Interest of C.A.*, 235 Neb. 893, 894-95, 457 N.W.2d 822, 824 (1990); *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990); *In re Interest of T.C.*, 226 Neb. 116, 409 N.W.2d 607 (1987).

K.M.S. was born out of wedlock on January 21, 1986. The birth certificate listed E.S. as the father and D.C. as the mother; however, the birth certificate was never signed by E.S.

The father claims that he was present in the delivery room at the child's birth and that he visited the child daily while she was in the hospital. The child was removed from her mother's care and custody, at the hospital in January 1986, days after her birth, by Child Protective Services of the Nebraska Department of Social Services.

A detention hearing was held on February 28, 1986, to determine if the child should remain in the State's custody or be returned to her mother. The father attended the detention hearing. He had not been officially notified of the hearing because he was not a party. During the hearing, the court advised E.S. that it was up to him to establish any rights he had in the child. At the conclusion of the hearing, as the parties were being excused, the court recommended that E.S. get an attorney.

On August 9, 1989, the State filed a petition against the father in the separate juvenile court, alleging that the minor was within the definition of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988) and § 43-292(1). The petition alleged that the child had been abandoned by her father in that there had been no contact with the child, nor had the father provided any financial or emotional support for a period in excess of 6 months. An attorney was appointed for the father on September 6, 1989, and a summons and copy of the petition were served on the father on September 27, 1989.

The adjudication hearing had been set for September 28, 1989, but upon the filing of a motion for a continuance by the father's attorney, the hearing was continued to a later date. A second summons was served on the father on November 20, 1989, together with a notice of hearing for December 4, 1989.

The father filed a motion to allow visitation, which was heard on November 28, 1989, and taken under advisement until a complete adjudication was held on December 4, 1989.

The father testified that he did not know he had any rights in the child. He said that after the child was removed from the hospital, he contacted Ruth Ryberg, the Child Protective Services caseworker assigned to his daughter's case. The testimony concerning that conversation is conflicting. The father stated that he was led to believe he did not have any

parental rights in his child because the proper paternity papers had not been filed. The record does not disclose that he ever complied with the requirements of Neb. Rev. Stat. § 43-104.02 (Reissue 1988) regarding his claim to be the father. He asserted that he was named on the birth certificate and felt this was sufficient to establish paternity. He also stated that he signed something he believed to be a birth certificate, although, as previously stated, this did not happen. The caseworker testified that she did not tell the father that he did not have any rights in the child.

The father further testified that he was unable to afford an attorney to establish his paternity and he was informed by the Legal Aid Society that at that time it did not handle paternity cases. However, during this same time period, the father was able to retain an attorney, Gary Norton, when the father was accused and convicted of assault and battery. However, Norton testified that he was only partially paid for the representation of the father.

The father called Norton to testify. The court inquired of Norton if all attorney-client relationships had been dealt with, and Norton replied that they had. Norton then testified that the father had consulted with him regarding a paternity issue and establishing some type of relationship with his child, but that the father did not come up with the retainer which Norton had requested. However, Norton stated that he discussed with the father some of his rights and options concerning his child. When asked if he advised the father about possibly becoming a party to the juvenile court action at the time of the detention hearing, the attorney replied, "I think we discussed the full range of those."

Ryberg testified that she first interviewed the father in January 1986. According to her, he claimed to be the father and was aware that she was a Child Protective Services caseworker. She stated that at no time did the father ever inquire as to whether he could visit the child, nor did he make any requests to visit the child. She testified that he never provided any money, gifts, or anything directed for the child; that he was aware of the fact that the child was in foster care; and that she had no further contact with the father through September 1987.

Debbie Nicholson, who is a Child Protective Services supervisor and supervised this case from its inception in January 1986 until the time of trial, also testified. She stated that she determined from a review of the file that there was no record of any attempt by the father to contact the Department of Social Services between September 1987 and August 9, 1989, nor did the agency receive from the father any offer of financial aid for the child during that period of time.

Although the issue is not assigned as error or argued by the father, the court on its own motion makes inquiry as to whether the father was accorded due process, i.e., was he properly noticed or summoned?

Neb. Rev. Stat. § 43-263 (Reissue 1988) requires that in an adjudication hearing the person who has custody of the juvenile must be served with summons. In like manner, summons must be served before parental rights may be terminated. Neb. Rev. Stat. § 43-291 (Reissue 1988).

A proceeding to terminate parental rights, which parents are entitled to attend, must employ fundamentally fair procedures satisfying the requirements of due process. *In re Interest of D.L.S.*, 230 Neb. 435, 432 N.W.2d 31 (1988). It therefore may be argued that because the father was not made a party in the original detention and adjudication hearing, he was not afforded due process.

However, § 43-291 provides: "Facts may also be set forth in the original petition, a supplemental petition, or motion filed with the court alleging that grounds exist for the termination of parental rights." The petition filed against the father alleged that the juvenile "comes within the meaning of Nebraska Revised Statutes, 1943, Section 43-292 (1), being under the age of eighteen years, and having been abandoned by [the] natural father of said child, for a period in excess of six months immediately preceding the filing of said petition," and prayed that "the Court terminate the parental rights between [the] father and [the juvenile]." The petition, summons, and notice of hearing were properly served on the father. Thus, the adjudication and the dispositional hearing were combined as permitted by statute, and the State fully complied with the requirements of due process.

Turning to the merits of the case, we find that an order terminating parental rights must be based on clear and convincing evidence. Clear and convincing requires that the trier of fact must be firm in its belief or conviction that the evidence shows the existence of the fact to be proven. *In re Interest of T.E., ante* p. 53, 458 N.W.2d 753 (1990); *In re Interest of J.B. and A.P.*, 235 Neb. 74, 453 N.W.2d 477 (1990).

Section 43-292 provides in part as follows:

The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition.

"Abandonment," as used in § 43-292(1), has been defined as "a parent's intentionally withholding from a child, without just cause or excuse, the parent's presence, care, love, protection, maintenance, and opportunity for displaying parental affection for the child." *In re Interest of T.E., supra* at 56, 458 N.W.2d at 756; *In re Interest of J.L.M. et al.*, 234 Neb. 381, 451 N.W.2d 377 (1990). The question of abandonment is largely one of intent, to be determined from all the surrounding facts and circumstances. *In re Interest of T.E., supra; In re Interest of A.G.G.*, 230 Neb. 707, 433 N.W.2d 185 (1988).

In spite of the fact that the father claimed he did not know he had any right to this child, he insisted that his desires were to create a relationship with her. However, he made absolutely no efforts beyond January 1986 to secure these rights. He knew that the child was in foster care under the control of the Department of Social Services, yet made no contacts with that agency, nor did he ever make any attempt to provide financial assistance for his daughter.

This court has stated: "Abandonment is not an ambulatory thing the legal effects of which a parent may dissipate at will by token efforts at reclaiming a discarded child." *In re Interest of T.E., supra* at 57, 458 N.W.2d at 756; *In re Interest of J.M.D.*,

233 Neb. 540, 446 N.W.2d 233 (1989); *In re Interest of Z.D.D. and N.J.D.*, 230 Neb. 236, 430 N.W.2d 552 (1988). As previously stated, the father made little effort to reclaim his daughter.

Parental obligation requires a continuing interest in the child and a genuine effort to maintain communication and association with that child. *In re Interest of J.M.D., supra; In re Adoption of Simonton*, 211 Neb. 777, 320 N.W.2d 449 (1982). The father has not shown that continuing interest in his daughter. In the 2 or more years preceding his receipt of the petition for termination, he never contacted anyone concerning his child. He did not discuss the matter with an attorney or any of the child's caseworkers.

From a de novo review of the record, we conclude that the evidence is clear and convincing that this child is a child within the definitions of §§ 43-247(3)(a) and 43-292(1). Further, it is in the child's best interests to terminate the parental rights of the natural father. Accordingly, the order of the juvenile court terminating the parental rights is affirmed.

AFFIRMED.