Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/09/2018 08:09 AM CDT

IN RE INTEREST OF JOSHUA G., A CHILD
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v. FRED G., APPELLANT.

___ N.W.2d ___

Filed October 9, 2018.    No. A-17-1309.

1. **Parental Rights: Notice.** Proceedings to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process; this rule applies to notice requirements.
2. **Parental Rights: Due Process: Notice: Jurisdiction.** In proceedings to terminate parental rights, once the court acquires jurisdiction over the person, due process still requires that such person be afforded reasonable notice of further proceedings.
3. **Service of Process: Notice.** Service by publication under Neb. Rev. Stat. § 43-268(2) (Reissue 2016) can be made only after a reasonably diligent search fails to locate the party to be served.
4. ____: ____. A reasonably diligent search for the purpose of justifying service by publication does not require the use of all possible or conceivable means of discovery, but is such an inquiry as a reasonably prudent person would make in view of the circumstances and must extend to those places where information is likely to be obtained and to those persons who, in the ordinary course of events, would be likely to receive news of or from the absent person.
5. ____: ____. Whether all reasonable means to qualify a search as a "reasonably diligent" one have been exhausted must be determined by the circumstances of each particular case.

Appeal from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Darin J. Knepper, Deputy Scotts Bluff County Public Defender, for appellant.

Danielle Larson, Deputy Scotts Bluff County Attorney, for appellee.

MOORE, Chief Judge, and BISHOP and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Fred G. appeals the order of the county court for Scotts Bluff County which terminated his parental rights to his son, Joshua G. On appeal, Fred asserts that he was not provided with proper notice of the termination proceedings because the State's affidavit for service by publication was legally insufficient. As a result, Fred argues he was denied his due process right to participate in the termination proceedings. For the reasons set forth herein, we find Fred's assertion to be without merit, and we affirm the decision of the county court to terminate his parental rights.

## BACKGROUND

The juvenile court proceedings below involve Joshua, born in January 2015, and his parents, Fred and Martha H. Martha previously relinquished her parental rights to Joshua. As a result, she is not a party to this appeal and will be discussed only to the extent necessary to provide context.

On May 10, 2016, when Joshua was almost 18 months old, the State filed a juvenile court petition alleging that Joshua was a juvenile as described by Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2015) due to the faults or habits of both Fred and Martha. Specifically, the petition alleged that Fred and Martha had failed to provide Joshua with safe and stable housing and with necessary care. In addition, it alleged that Joshua was at risk for harm due to Fred and Martha's engaging in domestic violence and using illegal substances. Fred was personally served with the petition.

A first appearance hearing was held on May 19, 2016. Fred appeared at this hearing, affirmed that he had been personally

- 413 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

served with a copy of the petition, and entered a denial to the allegations contained within the petition. Fred appeared at a subsequently held hearing in July, in order to contest Joshua's placement with his maternal grandparents.

Fred appeared in the county court again on August 15, 2016. At that time, a contested adjudication hearing was held. At this hearing, the State presented evidence that Fred had been repeatedly arrested for assaulting Martha, including on one occasion after the juvenile court petition had been filed and an active protection order was in place. Fred had been in jail since February. The State offered evidence to demonstrate that Fred used methamphetamine.

Fred testified at the hearing and denied that he was currently using drugs. However, he admitted to assaulting Martha. He testified that on one occasion, they got into an altercation and, while holding Joshua, Fred "hit [Martha] right in the eye as hard as [he] possibly could [and] gave her . . . basically two black eyes from it." He testified that he had recently been released from jail and was renting a two-bedroom house. Ultimately, the county court adjudicated Joshua as a child within the meaning of § 43-247(3)(a) as to Fred.

Subsequent hearings were held in September and December 2016 and in February and April 2017. Fred appeared at and participated in each of these hearings. Shortly after the April 2017 hearing, Fred appeared at an office of the Department of Health and Human Services (the Department) and indicated he wished to relinquish his parental rights to Joshua. He filled out all of the necessary paperwork, but then admitted that he was under the influence of drugs and, in fact, had taken drugs right before arriving. As a result of this admission, the Department could not accept Fred's relinquishment.

At a hearing in July 2017, Fred did not appear. The State offered evidence which demonstrated that Fred had not participated in any services, including visitation with Joshua, since April. In addition, Martha informed the court that Fred

- 414 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

was no longer in Nebraska and that she did not believe he was going to return. She stated, "[H]e works in Cheyenne, Wyoming, and he stays between there and Fort Collins, Colorado."

On September 13, 2017, the State filed a motion to terminate Fred's parental rights to Joshua. At a subsequent hearing, the State informed the county court that it had been unable to serve Fred with the motion to terminate "because nobody knows his address."

The State filed a motion for service by publication on October 12, 2017. In the motion, the State alleged that "service cannot be made upon [Fred] with reasonable diligence by either personal service or by leaving notice of summons at [Fred's] usual place of residence which is unknown at this time." Attached to the motion was an affidavit which alleged, among other things, that the State had attempted, unsuccessfully, to serve Fred at his last known address in Nebraska. The State also alleged that the Department had not had contact with Fred since April and that he was believed to be somewhere in Cheyenne, Wyoming.

The county court granted the State's motion to serve Fred by publication. Notice of the motion to terminate Fred's parental rights to Joshua and the date of the scheduled hearing on the motion was published in a Scottsbluff, Nebraska, newspaper on October 22 and 29 and November 5, 2017.

After the State had published notice of the motion to terminate Fred's parental rights, Fred's court-appointed counsel filed a document disclosing potential witnesses for the termination hearing. Included in the list of potential witnesses was Fred.

The termination hearing was held on November 20, 2017. Fred did not appear at the hearing. At the start of the hearing, the county court noted that Fred's counsel had previously filed a motion to continue the hearing, but that the motion had been denied. A copy of the motion to continue is not included in our record. The State offered into evidence an exhibit

- 415 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

demonstrating that Fred had been served "via publication." Fred's counsel did not object to the exhibit.

The State went on to present evidence in support of its motion to terminate Fred's parental rights. Part of the State's evidence addressed Fred's current whereabouts. The Department caseworker assigned to the family's case, Breanna Bird, testified that she had not had any contact with Fred from April 2017 to approximately 2 weeks prior to the termination hearing. At that time, she was able to reach Fred on the telephone. She indicated that Fred refused to tell her where he was, but he did say he was "in a different time zone." Bird testified that she did inform Fred that a motion to terminate his parental rights had been filed. However, she could not provide any more details because Fred immediately indicated that he was at work and could not talk at that time. He told Bird that he would be able to speak after work. However, when Bird called him back later, Fred did not answer.

Bird also testified that in July 2017, Martha told her that both she and Fred were residing in Wyoming. However, Martha also told Bird that she was "wanting to leave Fred there." By September, when the motion to terminate Fred's parental rights was filed, Martha told Bird that she did not know where Fred was. She thought he might be back in Nebraska, but had not had any contact with him.

Other evidence revealed that after April 2017, Fred had sent text messages to Joshua's foster mother to ask about Joshua. However, the text messages stopped about a month prior to the termination hearing and Joshua's foster mother did not know where Fred was located.

At the close of the State's evidence, Fred's counsel asked that the county court not terminate Fred's parental rights at that time so that Fred could participate in subsequent hearings. Counsel indicated, "[Fred] was unable to be back for his hearing." Ultimately, the county court entered an order terminating Fred's parental rights to Joshua.

Fred appeals from the county court's order.

## ASSIGNMENT OF ERROR

On appeal, Fred asserts that the State's affidavit for service by publication was legally insufficient and that, as a result, he was denied due process because he did not receive proper notice of the termination proceedings.

## ANALYSIS

In its brief to this court, the State argues that Fred has waived his objections to any insufficiency in the service of process because he failed to object to the service at any time prior to the conclusion of the termination hearing. Specifically, the State argues:

> Despite ample opportunities to raise issue with the form of service in this case, counsel for the father waited until quite literally the very end of the line. Allowing represented parties to wait until after the conclusion of the case on the merits to raise issue with the beginning of the case is against public policy, ideas about judicial efficiency, and case law.

Brief for appellee at 7.

While the State's argument regarding whether Fred has waived any objection to the service is well taken, we need not decide the issue of waiver in this case. Our record on appeal clearly provides sufficient evidence to demonstrate that the State conducted a reasonably diligent search for Fred and that service by publication was proper.

Our record discloses that Fred was personally served with the juvenile court petition filed by the State. In addition, he was present personally at many of the various hearings held by the county court, commencing with the first appearance hearing in May 2016 and continuing through a review hearing in April 2017. Even after Fred stopped appearing at the hearings, his court-appointed counsel continued to appear on his behalf. Therefore, there is no question as to the court's jurisdiction over Fred. However, Fred was still entitled to notice that a motion to terminate his parental rights had been filed and when

- 417 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

the hearing was to be held on that motion. Neb. Rev. Stat. § 43-267(2) (Reissue 2016) provides:

> Notice of the time, date, place, and purpose of any juvenile court hearing subsequent to the initial hearing, for which a summons or notice has been served or waived, shall be given to all parties either in court, by mail, or in such other manner as the court may direct.

[1,2] In addition, the Nebraska Supreme Court has held that proceedings to terminate parental rights must employ fundamentally fair procedures satisfying the requirements of due process. *In re Interest of A.G.G.*, 230 Neb. 707, 433 N.W.2d 185 (1988). This rule applies to notice requirements. *Id*. Once the court acquires jurisdiction over the person, as it did in this case, due process still requires that such person be afforded reasonable notice of further proceedings. However, we note that once a person has appeared and has been afforded the benefit of counsel, that person has an obligation to keep counsel and the court informed of his or her whereabouts. See *id*. This Fred failed to do. In fact, evidence in our record suggests that Fred was actively evading the State's efforts to locate him.

Because Fred removed himself from the state in the middle of the juvenile court proceedings and failed to provide anyone with his contact information, the State was unable to serve him with the motion to terminate his parental rights either personally or by mail. As a result, the State requested the court's permission to serve the motion by publication.

[3] Neb. Rev. Stat. § 43-268(2) (Reissue 2016) provides for service by publication in juvenile court proceedings as follows:

> [N]otice, when required, shall be given in the manner provided for service of a summons in a civil action. Any published notice shall simply state that a proceeding concerning the juvenile is pending in the court and that an order making an adjudication and disposition will be entered therein. . . . Such notice shall be published once

- 418 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

each week for three weeks, the last publication of which
shall be at least five days before the time of hearing.

Notice "in the manner provided for service of summons in a
civil action," as described in § 43-268(2), is provided for in
Neb. Rev. Stat. § 25-517.02 (Reissue 2016), which provides
that service may be made by publication "[u]pon motion and
showing by affidavit that service cannot be made with reason-
able diligence by any other method provided by statute . . . ."
Accordingly, service by publication under § 43-268(2) can be
made only after a reasonably diligent search fails to locate the
party to be served. See *In re Interest of A.W.*, 224 Neb. 764,
401 N.W.2d 477 (1987).

The crux of Fred's argument on appeal is that the State did
not sufficiently demonstrate that it had conducted a reasonably
diligent search to locate him and that, as a result, notice by
publication was not proper. Upon our review of the record, we
find that Fred's assertion lacks merit.

[4,5] A reasonably diligent search for the purpose of jus-
tifying service by publication does not require the use of all
possible or conceivable means of discovery, but is such an
inquiry as a reasonably prudent person would make in view
of the circumstances and must extend to those places where
information is likely to be obtained and to those persons who,
in the ordinary course of events, would be likely to receive
news of or from the absent person. *In re Interest of A.W., supra*.
Whether all reasonable means to qualify a search as a "reason-
ably diligent" one have been exhausted must be determined by
the circumstances of each particular case. *Id.*

In the State's affidavit in support of its request to provide
notice by publication, it indicated that it had attempted to
serve Fred with the motion to terminate his parental rights
at his last known address in Nebraska. However, he was no
longer at that address and, in fact, had not had contact with
the Department for approximately 5 months. In addition, the
affidavit indicated that Fred was "believed to be somewhere in
Cheyenne, Wyoming, although an exact address is unknown."

- 419 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

The affidavit also detailed the Department's attempt to determine Fred's whereabouts through Martha. This attempt was not successful.

In determining whether the State conducted a reasonably diligent search for Fred, we also look to the evidence adduced at the termination hearing. That evidence reveals that by September 2017, when the motion to terminate Fred's parental rights was filed, Martha was no longer residing with Fred and did not know where he could be located. Previously, she had indicated that Fred was somewhere between Cheyenne, Wyoming, and Fort Collins, Colorado. She also indicated that Fred had been "hiding" from a warrant. Joshua's foster mother had received periodic text messages from Fred since his last contact with the Department, but she too did not know where Fred was residing.

In addition, when Bird was finally able to contact Fred by telephone 2 weeks prior to the termination hearing, Fred affirmatively declined to provide her with his address, instead simply indicating that he was "in a different time zone." During that same telephone call, Bird informed Fred that a motion to terminate his parental rights had been filed. Fred immediately ended the conversation before Bird could provide him with details about the scheduled hearing on the motion. Fred did not answer Bird's followup telephone call.

Given all of the evidence, we find that the State conducted a reasonably diligent search to locate Fred in order to serve him with the motion to terminate his parental rights. Of particular importance to our finding is that Fred voluntarily removed himself from Nebraska and from Joshua, knowing that the juvenile court proceedings were pending. After participating in the proceedings for months, Fred failed to provide his attorney, the court, or the Department with any contact information. And, based on Fred's telephone conversation with Bird just prior to the hearing, it appears that Fred was purposefully evading the State's diligent efforts to locate him. There is nothing in our record to indicate that Fred took any steps to

- 420 -

Nebraska Court of Appeals Advance Sheets
26 Nebraska Appellate Reports
IN RE INTEREST OF JOSHUA G.
Cite as 26 Neb. App. 411

learn more about the motion to terminate his parental rights or the hearing on the motion after he was informed that the motion had been filed.

The State attempted to contact Fred through Martha, who presumably is the most likely person known to the State to have received any information about Fred's whereabouts. However, it is clear from our record that by the time the State filed the motion to terminate Fred's parental rights, Martha denied having any knowledge of Fred's location.

Despite the State's reasonably diligent efforts, it was unable to determine what state Fred was living in, let alone his specific physical address. The county court's decision to allow the State to serve the motion to terminate through publication is adequately supported by the record.

## CONCLUSION

Upon our review, we find that the State made a reasonably diligent search for Fred in order to notify him of the pending termination proceedings. Because the State was unable to locate Fred after that search, service by publication was proper and Fred was not denied his right to due process. After the service by publication was completed, the county court held a termination hearing where it heard evidence and ultimately terminated Fred's parental rights. Fred does not challenge the sufficiency of the evidence to terminate his parental rights. We affirm the order of the county court in all respects.

Affirmed.