699 P.2d 129

**STATE of New Mexico, ex rel., DEPARTMENT OF HUMAN SERVICES, SOCIAL SERVICES DIVISION, Petitioners-Appellees,**

v.

**Patricia Ann OUSLEY, and Norman Ousley, Respondents-Appellants,**

**In the Matter of John DOE, A Minor Child.**

**No. 7791.**

Court of Appeals of New Mexico.

April 9, 1985.

Manuel C. Hernandez, Carrasco & Hernandez, Carlsbad, for respondent-appellant Patricia Ann Ousley.

James L. Dow, Dow & Feezer, P.A., Carlsbad, Guardian Ad Litem.

Paul G. Bardacke, Atty. Gen., Corliss G. Thalley, Asst. Atty. Gen., Richard J. Rubin, Gen. Counsel, Dept. of Human Services, Santa Fe, for petitioners-appellees.

## OPINION

ALARID, Judge.

This appeal arises from the trial court's termination of the parental rights of both the mother (respondent) and the father of John Doe. Only the mother appeals the termination. The father, not having participated at the trial level, does not contest the trial court's order. On appeal, the mother challenges the trial court's order on three grounds asserting that: (1) she was denied due process because the trial court did not order a predisposition report prior to entering a disposition in a neglect proceeding that took place prior to the termination; (2) she was denied due process because the trial court's judgment in the neglect proceeding did not include a treatment plan; and (3) there was no clear and convincing evidence to support the termination. We hold that the termination statute,

NMSA 1978, Section 40–7–4(B)(3) (Supp. 1984) does not require a prior adjudication of neglect and, therefore, any alleged defects in that prior proceeding will not affect the later termination. Additionally, with respect to the second issue raised, the record does not support the contention that respondent was without any guidance or treatment plan. Thirdly, the record reveals sufficient evidence for the action taken by the trial court and, therefore, the decision of the trial court will be affirmed.

## FACTS

Two separate statutory proceedings were litigated involving the respondents which concerned the welfare of their three minor children. Respondent is the natural mother of John Doe and his two half-sisters. The first was commenced by a neglect petition filed April 27, 1982, under the New Mexico Children's Code, NMSA 1978, Sections 32–1–1 to 53 (Repl.Pamp.1981 and Cum.Supp.1984). The petition was based on reports that respondents had a long history of instability, marital and drinking problems. The trial court entered a judgment of neglect and a dispositional order thereon on October 26, 1982. The three children were placed in the legal and physical custody of the Department of Human Services until physical custody could be transferred to Travis Wooten in Texas through the Interstate Compact. Travis Wooten, the ex-husband of the respondent, is the natural father of the two daughters. He requested intervention in the neglect case.

On April 16, 1983, a motion to review custody was filed pursuant to the adjudication of neglect. *See* NMSA 1978, Section 32–1–38.1 (Cum.Supp.1984). The hearing was held on May 23, 1983, and the court entered findings of fact and conclusions of law on June 28, 1983. The order of the court, incorporating the findings, was filed July 12, 1983. The court placed physical custody of all three children with Travis Wooten.

Another motion for periodic review of custody was filed on July 25, 1983, and a hearing was conducted on August 29, 1983.

The court's order entered on September 29, 1983, maintained physical custody of the two girls with Travis Wooten. Custody arrangements for the boy, however, had to be changed because respondent had gone to Texas and created an "uproar", making it impossible for the Wootens to retain the boy in their custody. Respondent had obtained copies of the tapes of the sequestered interview of the children, at which interview only the judge and guardian ad litem were present. She then confronted the children directly with this information. Respondent admitted that she caused this confrontation. Respondent also threatened Mr. Wooten at that time. Based upon the actions of respondent, the court, for the first time during the neglect proceedings, ordered that the respondent's visitation rights be terminated.

Respondent did not appeal from the adjudication of neglect on October 26, 1982, or from the subsequent orders of the court after the periodic review hearings entered on July 12, 1983, and September 29, 1983.

On October 28, 1983, the State filed an application for termination of parental rights as to John Doe. The action was filed pursuant to Section 40–7–4. The hearing occurred on December 9, 1983. The court's findings of fact and conclusions of law were filed on February 15, 1984. The order terminating parental rights was entered on March 8, 1984. Respondent's appeal is from the order entered on March 8, 1984.

## DISCUSSION

Respondent's first two issues, are based on claims of non-compliance with requirements of the Children's Code. Section 32–1–32.1 requires predisposition studies and reports in neglect cases prior to a dispositional hearing. Section 32–1–34(C) requires the court to include a treatment plan in its neglect judgment. Because neither of these statutes was formally complied with in the neglect action, respondent contends that she was deprived of due process of law in the termination action because she did not know what she had to do in order to be reunited with her children.

The answer to respondent's contention is that the termination statute, Section 40–7–4(B)(3), does not require a prior adjudication of neglect. *See In Re Doe*, 98 N.M. 442, 649 P.2d 510 (Ct.App.1982). It only requires the court to find, in the instant proceeding, that a child is neglected as defined in the definitional section of the Children's Code and to find that the conditions and causes of neglect are unlikely to change in the foreseeable future, despite reasonable agency efforts to assist the parent in effectuating a change. There is nothing in the termination statute which requires a prior children's court adjudicative proceeding. *Compare In Interest of Crooks*, 262 N.W.2d 786 (Iowa 1978) (statute itself provided for termination where, following a neglect adjudication, agency efforts under the direction of the court failed to correct conditions); *State ex rel. Department of Human Services v. Perlman*, 96 N.M. 779, 635 P.2d 588 (Ct.App.1981) (termination decree set aside where it was entirely based on earlier, invalid, neglect judgment). In this case, although the court took judicial notice of the prior neglect proceedings, the application for termination of parental rights was based on facts indicating a continuing state of child neglect stemming from the time of the prior proceedings, and not on the proceedings themselves. The court's findings of fact are based on facts and not on prior adjudications. This case is distinguishable from *Perlman* where the termination was based on the prior adjudication of neglect.

Respondent contends that she was not on notice of what was expected of her to regain custody of her children. The record belies this contention, notwithstanding the fact that none of the orders in the neglect proceedings contain a formal treatment plan. The original order was entered on stipulation in which the respondent agreed to seek psychological counseling to stabilize her own life for the purpose of improving her ability to recognize and meet the emotional needs of her children. Psychological counseling was a primary area of concern. The other primary area of concern was the fact that respondent was harassing and emotionally abusing the children by telling them to tell their custodians that they wanted to return to the mother's custody. The transcript in this case is replete with testimony by the Department of Human Services social worker that she told respondent on numerous occasions that it was necessary for her to have counseling by a professional psychologist. The transcript is also replete with warnings by the social worker and judge to respondent that she was not to harass the children with her demand that they state that they want to return to her custody.

Although this was not a formal treatment plan embodied in the original judgment, it did put respondent on notice of what was expected of her. Moreover, at the end of the last review hearing, the court told respondent that she was welcome to present the court with her own treatment plan and the court would review it. No such effort by respondent was forthcoming.

Respondent's parental rights were terminated for failing to make any progress toward meeting the needs of the child, and for acting contrary to the best interest and welfare of the child. Specifically, respondent refused to seek counseling that would help her. Further, the court found that this situation would not change in the future. The court's findings were supported by clear and convincing evidence.

Respondent's final contention that the evidence was insufficient to justify a termination is based on her assertion that, "[a]bsent a treatment plan and reasonable efforts to assist Pat Ousley by specifying the standards required by the Department of Human Services of her in order to regain custody of her child, the court lacks clear and convincing evidence upon which to support its findings." As has been stated, respondent had been repeatedly told exactly what she had to do (get professional counseling and stop bothering the children about their living arrangements). The evidence was that she failed and refused to do so. Her position was that she

did not need professional counseling, that professional counseling was not helping her, and that it was appropriate for her to pressure the children into making a decision as to their living arrangement.

The foregoing provides the basis upon which to dispose of the issues raised by respondent in this case. Section 40–7–4(B)(3) does not require a prior adjudication of neglect with all of its formal requisites. If termination is based on a prior adjudication, then the prior adjudication must be legal. *Perlman.* However, if the termination is not based on the adjudication but rather is based on the facts underlying the adjudication, then all that is necessary is a finding of child neglect and a determination that the causes of neglect by respondent are not likely to change despite reasonable efforts by the agency. To the extent that a due process notice issue is presented under *Crooks*, that concern is satisfied by informing the parent what it is he or she needs to do to remedy the neglect. Because that was done here, the respondent's issues lack merit.

The judgment of the trial court terminating parental rights is affirmed. Each party shall bear their own costs on appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and BIVINS, J., concur.