IN RE INTEREST OF H.P.A., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. M.A.C., APPELLANT.
466 N.W.2d 90

Filed March 1, 1991.   No. 90-411.

George E. Brugh for appellant.

Charles W. Campbell, York County Attorney, for appellee.

Kevin V. Schlender, guardian ad litem.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.
The parental rights of L.C. and M.A.C. to their son, H.P.A., were terminated by an order of the York County Court. The

father, L.C., did not appeal. The mother, M.A.C., timely appealed to this court, assigning five errors, which, as argued, may be consolidated into two: (1) that the trial court erred in overruling the mother's motion for a continuance of the hearing held to determine termination and in allowing the State to proceed in the absence of the mother and (2) that the trial court erred in finding that there was clear and convincing evidence to support the court's order terminating the mother's parental rights. We affirm.

The record shows that on December 3, 1986, a petition was filed in the county court alleging in paragraph 1 that H.P.A. was born on April 1, 1985, to M.A.C. and L.C., and alleging in paragraph 2(a) that H.P.A. was a juvenile as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1988), in that the child lacked proper parental care by reason of the fault or habits of his parents. On December 4, 1986, a detention hearing was held. The child was placed in the care and custody of the Nebraska Department of Social Services (DSS) pending disposition. The child has remained, under the supervision of DSS, with the same foster family since his placement.

On December 18, 1986, an adjudication hearing was held. Both parents admitted paragraphs 1 and 2(a) of the petition. A dispositional hearing was held on February 2, 1987. The child was ordered to remain in the care of DSS. The parents were ordered to attend inpatient alcohol treatment and to complete other requirements.

Between 1987 and 1989 a series of review hearings were held, and in each of these the court found that the mother had failed to comply with the court's previous orders. On September 13, 1989, a supplemental petition was filed seeking termination of the parents' parental rights to H.P.A.

With regard to the mother's first assignment of error, the record shows that the termination hearing was set for February 14 and 15, 1990. Proper notice was given to all parties that the hearing was to begin at 8:30 a.m. on Wednesday, February 14. Neither the father nor the mother appeared. Counsel for all parties were present, as were eight witnesses, two of whom were from outside York. In a colloquy with the court, counsel for the mother stated that he did not know why the mother was not

present, that counsel had talked to the mother on the preceding Monday, and that the mother lived "within a block or two" of the courthouse. The county attorney suggested that someone from the sheriff's office could try to reach the mother and give her a ride to the courthouse. The mother's attorney then said, "That might be the thing to do. Have a deputy go knock on her door."

Apparently that plan was followed. One-half hour later the sheriff testified, in open court, that he had gone to the mother's residence, had knocked on the door, and was met by the mother's boyfriend (not the child's father), who advised the sheriff that the mother was not there and refused to permit the sheriff into the house, but said the mother would be notified. As the sheriff talked to the boyfriend, the sheriff saw "four or five grocery sacks full of beer cans" on the porch.

The trial then proceeded and recessed at approximately 3 p.m. The trial court then continued the hearing until 9 a.m. on the next day. The mother did not appear at the continued hearing, and her attorney again moved for a continuance and refused to submit "my rest in her case." The trial court denied the requested continuance and determined that the mother had rested in the trial. On April 13, 1990, the court entered its order terminating parental rights.

In *Kulhanek v. Kulhanek*, 134 Neb. 349, 351-52, 278 N.W. 563, 564 (1938), this court considered a similar situation, and stated:

> The first proposition to be determined is whether the trial court abused its discretion in overruling the motion for continuance. There is nothing in the record but what discloses that the defendant absented himself voluntarily or through his own negligence. Courts cannot permit parties to thus disregard the prompt administration of trials. To hold otherwise would let any litigant determine for himself when he wishes to have his case tried. The defendant knew his case was to be tried at this term of court, every effort was made to reach him, the record discloses that some one was at his home when these efforts were made, and he cannot complain of his own neglect. Parties have a right to be present when their cases are

tried, but this right may be waived, and it should be so held when the absence is voluntary and due to his own negligence.

The granting or denial of a continuance of a trial or hearing is within the discretion of the trial court. When a party voluntarily or negligently fails to appear for scheduled court proceedings after proper notice, such party waives the right to be present at such proceedings. In the case at bar, the court did not abuse its discretion in refusing to continue the trial of the case, even though the mother failed to appear. It is apparent that every opportunity to attend the trial was given to the mother. She chose not to attend. She waived her right to be present. The mother's first assignment of error is without merit.

In the mother's second assignment of error, she contends that the evidence was not sufficient to support a finding that her parental rights should be terminated. The facts before the court may be capsulized in the testimony of a chemical dependency counselor who worked for an agency which provided counseling for the mother from December 1986 through July 1988 and who began counseling her again on August 8, 1989. The record shows the mother was in inpatient treatment for chemical dependency in 1987 and had been in similar inpatient treatment at least two other times before that. In August 1989, the mother told the counselor that she had been using

[a]lcohol, marijuana, sedatives and barbiturates, tranquilizers, amphetamines, cocaine. A category entitled, other opiates — op- — opioids and there was some question if there had been some heroine use and pcp use. And she also identified some other mixed drugs, and I'm not sure what those were off-hand.

The counselor testified as follows:

Q. Did she tell you how frequently she used these various drugs?

A. I believe that marijuana — That she was using marijuana on a almost daily basis, if not daily. And I think the other drugs, when they were available to her. They were current use, as far as the way that I documented, as either if there's been use within the past year or lifetime usage. And the ones I identified were those that she had

been using within the past year.

That such use continued up to the date of the hearing herein on February 14 and 15, 1990, may be concluded by consideration of the facts surrounding the mother's failure to appear for the hearing. The mother's second assigned error is without merit.

On April 13, 1990, the court entered an order terminating the rights of both parents, finding that there was clear and convincing evidence, including testimony by qualified expert witnesses, that the mother "substantially and continuously and repeatedly neglected" the child, that the mother was an unfit parent by reason of her habitual use of intoxicating liquor, that continued custody in either parent would result in serious emotional or physical damage to the child, and that termination of the parents' parental rights was in the best interests of the child.

Our de novo review of the record shows that there is clear and convincing evidence of the mother's continuous neglect and failure to change the lifestyle which led to the neglect of the child and that it is in the child's best interests to terminate the mother's parental rights. The decision of the lower court is affirmed in its entirety.

AFFIRMED.