IN RE INTEREST OF JOELYANN H., A CHILD UNDER 18 YEARS OF AGE. DAVE R. AND ROBIN R., APPELLEES, V. LORI H., APPELLANT.

574 N.W.2d 185

Filed February 10, 1998.    No. A-97-308.

Thomas M. Sonntag, of Peetz, Sonntag & Goodwin, P.C., for appellant.

David L. Wilson, of Burke & Wilson, for appellees.

William C. Peters, guardian ad litem.

HANNON, SIEVERS, and INBODY, Judges.

INBODY, Judge.

Dave R. and Robin R., court-appointed guardians of Joelyann H., moved, pursuant to Neb. Rev. Stat. § 43-292 (Reissue 1993), to terminate the parental rights of Joelyann's natural mother, Lori H. The county court for Kimball County, Nebraska, sitting as a juvenile court, entered an order terminating Lori's parental rights. Lori appeals. For the reasons set forth herein, we reverse, and remand with directions to dismiss this cause.

## STATEMENT OF FACTS

Joelyann was born to Lori on September 2, 1993, while Lori was a 15-year-old ward of the Nebraska Department of Social Services and living in Sidney, Nebraska. Shortly afterward,

Lori's caseworker placed her briefly in a shelter in Scottsbluff, Nebraska, and Joelyann was placed with Dave and Robin in Kimball, Nebraska. Lori later moved to her mother's home, but Joelyann stayed with Dave and Robin from December 1993 through February 1994. On February 25, 1994, Lori and Joelyann were placed in "TLC," a home for single mothers in Lincoln, Nebraska; the following September, Lori left TLC without permission. Lori's mother took Joelyann home with her; Lori went to Ogallala, Nebraska, to Scottsbluff, and then with a friend to Florida. After approximately 1 month, Lori was returned from Florida to Nebraska as a runaway; she lived briefly with her mother and then on her own with Joelyann in an apartment in Kimball.

On February 6, 1995, Lori again left Joelyann with Dave and Robin and returned to Lincoln; Joelyann has stayed with Dave and Robin since that date. In April, Dave and Robin were appointed temporary guardians of Joelyann in proceedings initiated by Lori's mother. Lori argues in her brief that she opposed this assertion of guardianship but does not cite to the record in support of this argument, nor have we located any support in the record.

In any event, Lori moved back to Kimball in January 1996 and made several visitations with Joelyann until March. At that time, a dispute erupted between Lori and Dave and Robin regarding a rumor that Lori had a health condition that would endanger Joelyann; Dave and Robin demanded a medical statement from Lori, which she refused to provide. Consequently, Dave and Robin refused to allow any more visitations.

In April 1996, Lori returned to Lincoln because she "had got [sic] in trouble for . . . forgery" in Lancaster County. Lori admits selling illegal drugs during that stay in Lincoln and testified that in late April she left Lincoln for New York State because she was assaulted, and feared further assault, by the drug dealers for whom she worked and who had accused her of not paying them. Lori testified she had intended to stay in New York "forever" but was arrested in July for petty larceny and extradited to Nebraska in August on pending Nebraska warrants. On or about October 1, she was released on a personal recognizance bond.

Also on October 1, 1996, Dave and Robin filed a petition in "the juvenile court of Kimball County," asking that Lori's parental rights in Joelyann be terminated pursuant to § 43-292 of the Nebraska Juvenile Code and asserting that Lori had abandoned Joelyann for 6 months or more, had neglected Joelyann, and was unfit because of habitual use of alcohol or drugs. The petition also alleged that such termination would be in Joelyann's best interests.

## ASSIGNMENTS OF ERROR

Lori contends the court erred in concluding that she was an unfit parent for purposes of § 43-292 (1), (2), and (4). She also contends the court erred in determining that it was in the best interests of Joelyann that Lori's parental rights be terminated.

## STANDARD OF REVIEW

■ An appellate court always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992).

■ An appellate court has the power and duty to determine whether the appellate court has jurisdiction over the matter before it. When lack of jurisdiction is apparent on the face of the record, yet the parties fail to raise it, it is the duty of a reviewing court to raise and determine the issue of jurisdiction sua sponte. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996).

## ANALYSIS

We do not reach Lori's assigned errors because we find a fundamental and fatal flaw in the procedures followed by the county court for Kimball County, sitting as a juvenile court—a flaw that nullifies that court's actions and order.

■ That flaw becomes apparent once the structure and purpose of the Nebraska Juvenile Code are examined:

> In Nebraska, the rights of the parent and the child are protected by the separate adjudication and dispositional phases of the dependency proceedings. . . . The purpose of the adjudication phase of the proceeding is to protect the

interests of the child; the purpose of the dispositional phase is to determine placement and the rights of the parties in the action.

*In re Interest of Amber G. et al.*, 250 Neb. 973, 980, 554 N.W.2d 142, 148 (1996).

The adjudication phase is contained in Neb. Rev. Stat. § 43-247 (Reissue 1993), which specifically provides that termination of parental rights for a juvenile born out of wedlock is within the exclusive jurisdiction of the juvenile court. Actions in juvenile court are initiated by filing a petition pursuant to § 43-247. This was made clear by the uncontradicted comments of State Senator Vard Johnson during the floor debate for recodification of the juvenile code during the 1981 legislative session: "[T]he termination provisions in the juvenile code do not even come into play . . . until after there has been some determination made that the child is a neglected child or the child is a dependent child . . . ." Floor Debate, L.B. 346, Judiciary Committee, 87th Leg., 1st Sess. 4369 (May 4, 1981).

More importantly, for purposes of this case, an adjudication that a child in question is within the purview of the juvenile code is a jurisdictional prerequisite to the dispositional phase. Compare *In re Interest of D.M.B.*, 240 Neb. at 352, 481 N.W.2d at 909 ("[i]f the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquiring jurisdiction of a child, then the juvenile court has no jurisdiction"). Although the adjudication and disposition phases may be combined, see Neb. Rev. Stat. § 43-291 (Reissue 1993) and *In re Interest of K.M.S.*, 236 Neb. 665, 463 N.W.2d 586 (1990), the adjudication phase may not be omitted altogether.

Dave and Robin did not file a petition pursuant to § 43-247, and there is no record of any adjudication hearing. Proceedings, instead, began at the dispositional phase, with a hearing on Dave and Robin's petition to terminate Lori's parental rights pursuant to § 43-292. In the absence of an adjudication petition and hearing in compliance with § 43-247, the juvenile court lacked jurisdiction over Joelyann and could not entertain any effort to terminate Lori's parental rights in her. The court's order purporting to terminate parental rights pursuant to § 43-292 is therefore a nullity. " 'The juvenile court can intervene between the parent and the child only if the child's

condition requires the state to use its power to protect the welfare of the child. *The circumstances of the child must come within the statute.'"* (Emphasis supplied.) *In re Interest of Goldfaden,* 208 Neb. 93, 99, 302 N.W.2d 368, 372 (1981).

Even if we were to somehow construe the petition filed by Dave and Robin as a petition for adjudication pursuant to § 43-247, it would be deficient. Neb. Rev. Stat. § 43-274 (Reissue 1993) provides that any such petition must be filed by the *"county attorney* or any reputable person residing in the county, *with the consent of the county attorney."* (Emphasis supplied.) Nothing in the record establishes that this petition was filed by or with the consent of the county attorney.

Further, the juvenile code provides, at Neb. Rev. Stat. § 43-279.01 (Reissue 1993), that all parties to a hearing on termination of parental rights, whether or not represented by counsel, "shall" be informed, inter alia, of the nature of the proceedings and the possible consequences or dispositions, of the right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the parent guilty of a crime, and of the right to appeal. Again, there is absolutely no showing that Lori was ever advised as to her rights as delineated in § 43-279.01. Even if the court had jurisdiction, this failure to advise Lori of her rights would have required reversal on those grounds. See, e.g., *In re Interest of A.D.S. and A.D.S.,* 2 Neb. App. 469, 511 N.W.2d 208 (1994) (failure to advise of rights pursuant to § 43-279.01 requires reversal, and remand for new hearing).

In view of our findings as stated herein, we do not reach Lori's assigned errors. "When a trial court lacks the power, that is, jurisdiction, to adjudicate the merits of a claim, an appellate court also lacks power to adjudicate the merits of the claim." *In re Interest of D.M.B.,* 240 Neb. 349, 353, 481 N.W.2d 905, 909 (1992).

## CONCLUSION

For the above-recited reasons, the judgment of the county court for Kimball County, sitting in its capacity as a juvenile court, is vacated, and the matter remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.