IN RE INTEREST OF JOSHUA M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. MITZI M., APPELLANT.
587 N.W. 2d 131

Filed November 3, 1998.   Nos. A-97-1085, A-97-1086.

James A. Wagoner for appellant.

Thomas C. Wolfe, Deputy Hall County Attorney, for appellee.

Brandi Bosselman, guardian ad litem.

HANNON, IRWIN, and INBODY, Judges.

INBODY, Judge.

## INTRODUCTION

Mitzi M. appeals the judgments of the county court for Hall County, sitting as a juvenile court, which terminated her parental rights to Joshua M., Jonathan M., Jasmine M., and Devon M. Case No. A-97-1085 involves Joshua, and case No. A-97-1086 involves Jonathan, Jasmine, and Devon. These cases were consolidated for trial and appeal. Generally, Mitzi con-

tends on appeal that the orders terminating her parental rights are not supported by sufficient evidence. For the reasons stated below, we affirm the order as it relates to Joshua, but we vacate the order as it relates to Jonathan, Jasmine, and Devon and remand the cause with directions to dismiss.

## FACTUAL BACKGROUND

Mitzi is the natural mother of Jonathan, Joshua, Jasmine, and Devon. Although the record is unclear as to the precise birthdates of each child, it is clear that each child was under 12 years of age at all times relevant to this proceeding. Accordingly, we need not further address the matter of each child's minority. Neither the father of Jonathan nor the father of Joshua, Jasmine, and Devon was a party in the cases before us.

On April 11, 1995, Joshua's father took Joshua to the then Department of Social Services (DSS) and indicated that he could not care for Joshua and that Mitzi was unavailable to provide care. At the time Joshua was placed in the care of DSS, Mitzi was incarcerated. During the pendency of this case, Joshua has remained in foster care.

A juvenile petition regarding Joshua was filed August 25, 1995, requesting that the court exercise jurisdiction over Joshua, as he was a juvenile as defined under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). On November 7, 1995, Mitzi admitted that Joshua was without proper support, and the court found that Joshua was a child as defined under § 43-247(3)(a). Three case plans were adopted by the court during the pendency of Joshua's case. All three plans required, among other things, that Mitzi obtain a psychological evaluation and comply with the recommendations of the evaluator. Mitzi also agreed to submit to random drug testing as requested by DSS.

On October 18, 1996, when arrested, Mitzi voluntarily placed Jonathan, Jasmine, and Devon with DSS for 1 day. At that time, the children suffered from various infections and their immunizations were not up to date. When DSS learned that Mitzi had other outstanding warrants in Hall County for which she would be unable to post bond, the State filed a juvenile petition regarding Jonathan, Jasmine, and Devon, requesting that the juvenile court exercise its jurisdiction over these chil-

dren on the ground that they were juveniles as defined under § 43-247(3)(a). On October 18, DSS was granted temporary custody of the children. No adjudication hearing was held.

On March 14, 1997, motions to terminate Mitzi's parental rights were filed in both cases. The motion regarding Joshua requested that Mitzi's parental rights be terminated pursuant to subsections (2), (4), (6), and (7) of Neb. Rev. Stat. § 43-292 (Cum. Supp. 1996). The motion regarding Jonathan, Jasmine, and Devon requested that Mitzi's parental rights be terminated pursuant to subsections (2) and (4) of § 43-292. The motions were consolidated for trial. A termination hearing was conducted on August 21. Witnesses included Mitzi, the DSS case manager assigned to the cases, two counselors who evaluated Mitzi, a Child Protective Services worker who had been assigned to the cases since May 1997, and Mitzi's mother.

The evidence presented generally established the following: Mitzi testified she has used "[c]rystal, meth and cocaine" since she was approximately 17 years old. While in prison from April to November 1995, Mitzi participated in a relapse prevention program. According to Mitzi, she has used drugs only twice since Joshua entered the juvenile court system. The record shows that Mitzi tested positive for drug use on three occasions: In December 1995, when she was arrested for driving under the influence of intoxicating liquor (DUI); in April 1996; and on June 16, 1997. Mitzi failed to appear for drug tests set up by DSS per the order of the juvenile court on at least three occasions.

According to Mark Nelson, a substance abuse counselor who evaluated Mitzi, Mitzi is dependent on methamphetamine. Nelson opined, based on her conduct and demeanor during his interview of Mitzi, that Mitzi was currently using drugs. Nelson and another counselor who evaluated Mitzi at her request both recommended either inpatient or intensive outpatient treatment. Mitzi had not completed any substance abuse treatment as of the termination hearing. However, Mitzi testified that she was enrolled in a relapse prevention program at the prison, but that the program had not yet begun.

Mitzi has been incarcerated numerous times since Joshua entered the juvenile system. She was incarcerated from April 19

to November 6, 1995; from December 28, 1995, to the end of January 1996; for the night of April 18, 1996; for 1 month in October 1996; and for 2 days in March 1997. Mitzi was again arrested on March 31 and remained incarcerated until the termination hearing in these cases. Her projected release date was February 1998. During the pendency of Joshua's case, Mitzi had been charged with DUI, shoplifting, unauthorized use of credit cards, forgeries, possession of marijuana and methamphetamine, and unauthorized use of a vehicle.

After hearing the evidence, the juvenile court terminated Mitzi's parental rights to Joshua, Jonathan, Jasmine, and Devon. The juvenile court terminated Mitzi's parental rights to Joshua based on subsections (2), (4), (6), and (7) of § 43-292 and to Jonathan, Jasmine, and Devon based on subsections (2) and (4) of § 43-292. The juvenile court found that termination of Mitzi's parental rights was in the children's best interests. Other evidence necessary to the resolution of this case is set forth in the analysis below.

## ASSIGNMENTS OF ERROR
Generally, Mitzi alleges that the evidence was insufficient to justify the termination of her parental rights. In particular, she contends that the juvenile court erred in finding that she was unfit by reason of habitual use of drugs, that she had neglected the children and refused to give them necessary parental care and protection, and that termination of her parental rights was in the children's best interests. As to Joshua only, she contends the juvenile court erred in finding that Joshua had been in out-of-home placement for 18 or more months, that she had failed to correct the conditions leading to such placement, and that reasonable efforts under the court's direction had failed to correct the conditions leading to the termination determination.

## STANDARD OF REVIEW
■ An appellate court must decide a case involving termination of parental rights de novo on the record. An appellate court is required to reach a conclusion independent of the findings of the juvenile court, but when evidence is in conflict, an appellate court considers and may give weight to the fact that the trial

court observed witnesses and accepted one version of the facts rather than another. *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995); *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996).

## ANALYSIS

### JOSHUA'S CASE

■ To terminate parental rights, the State must show that such termination is in the child's best interests and that at least one of the seven statutory grounds for termination of parental rights under § 43-292 exists. The State must prove these elements by clear and convincing evidence, that is, by that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993); *In re Interest of Theodore W., supra.*

We first address whether there was sufficient evidence to terminate Mitzi's parental rights regarding Joshua based upon § 43-292(2), which provides that parental rights may be terminated where the parent has "substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection." Mitzi argues that there was insufficient evidence to terminate her rights based on neglect because she had not served an "inordinate incarceration time." Brief for appellant at 9.

■ Although parental rights may not be terminated solely because of a parent's incarceration, parental incarceration is a factor which may be considered in determining whether parental rights should be terminated. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992); *In re Interest of B.A.G.*, 235 Neb. 730, 457 N.W.2d 292 (1990); *In re Interest of Theodore W., supra.* The Nebraska Supreme Court has also stated that although the fact of incarceration may well be involuntary on a parent's part, the illegal activities leading to his or her incarceration were voluntary. *In re Interest of R.T. and R.T.*, 233 Neb. 483, 446 N.W.2d 12 (1989). The Nebraska Supreme Court has also held that a parent's failure to change a lifestyle of chemical dependency may constitute neglect under § 43-292(2). See *In re Interest of H.P.A.*, 237 Neb. 410, 466 N.W.2d 90 (1991).

It is clear from the case law that evidence of a parent's lifestyle which includes frequent periods of incarceration, see *In re Interest of L.V., supra,* and a pattern of illegal drug use and dependence, see *In re Interest of H.P.A., supra,* may establish substantial and continuous or repeated neglect, justifying termination of parental rights. Drug dependency as well as incarceration certainly impacts a parent's ability to provide necessary care and protection for his or her child and also prevents a parent from maintaining steady employment and providing a stable home. See, *In re Interest of L.V., supra; In re Interest of H.P.A., supra.*

In the consolidated case before us, the record shows that during the pendency of these cases, Mitzi has tested positive for the use of methamphetamine. In addition, it appears from the record that Mitzi has refused to acknowledge the extent of her drug dependency or to seek adequate treatment therefor. At the termination hearing, Mitzi testified, "I think I used to be a drug addict. I don't think I am anymore." The record also shows that over a period of approximately 2 years, Mitzi has been incarcerated on six occasions.

Although Mitzi claimed at trial that she was a good mother, the evidence establishes a pattern or cycle of conduct of Mitzi's putting her drug dependency needs before the needs of her children. As stated by the juvenile court:

> [T]he mother's defense to this predicament presents a tragic and apparently never ending circle of circumstances. The mother is in jail because she uses drugs. On the other hand, the mother cannot get treatment because she is in jail. This cycle has not been broken by the mother during the pendency of either of these cases and the children cannot be left indefinitely in a situation that all evidence would indicate is highly unlikely to be corrected.

Over the 2 years preceding the termination hearing, Mitzi worked for only 1 day during the periods of time that she was not incarcerated. Nor does it appear from the record that Mitzi worked to build and maintain relationships with her children. She frequently missed or was late for visitation. Although the court ordered unsupervised visitations to cease until Mitzi obtained an alcohol and drug evaluation and sought treatment,

Mitzi did not seek treatment. The record also shows that DSS offered numerous services to assist Mitzi in regaining control of her life and her children.

Based upon our de novo review of the record, we conclude that the evidence clearly and convincingly established that Mitzi had substantially and continuously or repeatedly neglected Joshua. See § 43-292(2). In addition, we find that the evidence also established that Mitzi was unfit by reason of habitual use of illegal drugs, which conduct was seriously detrimental to the health, morals, and well-being of the children. See § 43-292(4). Because the State need prove only one of seven statutory grounds set forth in § 43-292 to terminate parental rights, we need not review the other alleged bases for termination. See *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993).

### BEST INTERESTS

Mitzi also argues that there was insufficient evidence that termination of her parental rights was in her children's best interests. The evidence shows that given Mitzi's lengthy history of drug dependency, it would be a significant length of time before Mitzi would be in a position to parent her children, even if Mitzi committed to turning her life around. The professionals involved in this case opined that given Mitzi's circumstances and the circumstances of the children, it was in the children's best interests that Mitzi's parental rights be terminated. Based upon our de novo review of the record, we conclude that termination of Mitzi's parental rights is in the best interests of Joshua.

### CASE OF JONATHAN, JASMINE, AND DEVON

Before considering Mitzi's assigned errors as they relate to Jonathan, Jasmine, and Devon, we must first resolve a jurisdictional issue. An appellate court has the power and the duty to determine whether it has jurisdiction over the matter before it. When lack of jurisdiction is apparent on the face of the record but the parties fail to raise it, it is the duty of the reviewing court to raise and determine the issue of jurisdiction sua sponte. *In re Interest of D.W.*, 249 Neb. 133, 542 N.W.2d 407 (1996); *In re Interest of Joelyann H.*, 6 Neb. App. 472, 574 N.W.2d 185 (1998). If the juvenile court lacked jurisdiction over the chil-

dren, then this court lacks jurisdiction to adjudicate the merits of the appeal. See *In re Interest of Joelyann H., supra.*

In *In re Interest of Joelyann H.*, this court held that parental rights may not be terminated unless and until the juvenile court has adjudicated the minor in question to be subject to its jurisdiction pursuant to § 43-247. The proceedings in *In re Interest of Joelyann H.* began and ended with the termination of parental rights. At no point was there any allegation that the child was within the jurisdiction of the juvenile court. In that case, this court concluded that "[i]n the absence of an adjudication petition and hearing in compliance with § 43-247, the juvenile court lacked jurisdiction over Joelyann and could not entertain any effort to terminate [her natural mother's] parental rights in her." 6 Neb. App. at 476, 574 N.W.2d at 188. This court further held that "an adjudication that a child in question is within the purview of the juvenile code is a jurisdictional prerequisite to the dispositional phase," which includes proceedings to terminate parental rights. 6 Neb. App. at 476, 574 N.W.2d at 188.

Although, in this case, the State did file a petition requesting that the court exercise jurisdiction over Jonathan, Jasmine, and Devon, pursuant to § 43-247(3)(a), the State did not request a hearing on the children's status, and no separate adjudication hearing was held. Instead, the State filed a motion to terminate Mitzi's parental rights, and termination proceedings were commenced.

When the court entered its order terminating Mitzi's parental rights, the court did not determine that Jonathan, Jasmine, and Devon were minor children as defined under § 43-247(3)(a), which had been requested by the original petition filed by the State on October 18, 1996. While a court need not hold a separate adjudication hearing, and while such hearing can be held at the same time as a termination hearing, it is nonetheless necessary that the court make such an adjudication before proceeding to terminate parental rights. Only after such an adjudication is made, either separately or in conjunction with related proceedings, may the juvenile court proceed to resolve the issue of termination of parental rights. Here, the juvenile court never determined that Jonathan, Jasmine, and Devon were

children within the definition of § 43-247(3)(a), as alleged in the State's petition.

Therefore, based upon the holding in *In re Interest of Joelyann H., supra*, we conclude that because the court had not adjudicated Jonathan, Jasmine, and Devon as required under the juvenile code, the court lacked jurisdiction to terminate Mitzi's parental rights in these children. Since the lower court lacked jurisdiction, this appellate court also lacks jurisdiction as to the termination of Mitzi's parental rights to Jonathan, Jasmine, and Devon. See *In re Interest of Joelyann H., supra*.

## CONCLUSION

For the above-recited reasons, we conclude that the juvenile court properly terminated the parental rights of Mitzi as to Joshua in case No. A-97-1085. In case No. A-97-1086, we vacate the order terminating Mitzi's parental rights to Jonathan, Jasmine, and Devon and remand the cause with directions to dismiss.

AFFIRMED IN PART, AND IN PART VACATED AND REMANDED WITH DIRECTIONS TO DISMISS.

IRWIN, Judge, concurring.

I disagree with the majority's conclusion that Mitzi's parental rights to Jonathan, Jasmine, and Devon were improperly terminated. Based upon a plain and ordinary reading of Nebraska statutes relating to the termination of parental rights, it seems clear that it is not necessary to adjudicate a juvenile prior to termination of parental rights under subsections (1) through (5) of Neb. Rev. Stat. § 43-292 (Cum. Supp. 1996). However, as I recognize that *In re Interest of Joelyann H.*, 6 Neb. App. 472, 574 N.W.2d 185 (1998), is binding authority, see, also, Neb. Ct. R. of Prac. 2E(5) (rev. 1996), I must concur. I set forth the reasons for my disagreement with the majority's conclusion and the conclusion in *In re Interest of Joelyann H., supra*.

In holding that a previous adjudication is necessary prior to the termination of parental rights, the majority relies on *In re Interest of Joelyann H., supra*, which in turn relies on comments made by a state senator during the floor debate for recodification of the juvenile code. The majority also relies on

Nebraska Supreme Court cases that the majority contends require an adjudication prior to termination of parental rights, regardless of the statutory basis for the termination.

The Supreme Court cases on which the court relied in *In re Interest of Joelyann H., supra,* cannot be read to stand for the proposition that an adjudication is required in *all* cases prior to termination of parental rights. In *In re Interest of D.M.B.,* 240 Neb. 349, 481 N.W.2d 905 (1992), the court held that a juvenile court lacks jurisdiction to terminate parental rights if the pleadings and evidence at the adjudication hearing do not justify a juvenile court's acquirement of jurisdiction of a child. In that case, the child was adjudicated prior to the termination proceeding. In *In re Interest of K.M.S.,* 236 Neb. 665, 463 N.W.2d 586 (1990), a petition was filed against a father, alleging that the child was within the definition of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) and § 43-292(1) in that the child had been abandoned. The court held that the father had been accorded due process because the "adjudication and the dispositional hearing were combined as permitted by statute . . . ." *In re Interest of K.M.S.,* 236 Neb. at 669, 463 N.W.2d at 590. In these cases, the court was not presented with and did not address the issue before us, namely, whether parental rights may be terminated in an original juvenile action.

I would conclude that the issue before us must be determined based upon the language in the termination statutes, in particular, Neb. Rev. Stat. § 43-291 (Reissue 1993) and § 43-292. Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision reached by the court below. *In re Interest of Michael M.,* 6 Neb. App. 560, 574 N.W.2d 774 (1998); *In re Interest of Laura O. & Joshua O.,* 6 Neb. App. 554, 574 N.W.2d 776 (1998). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Popple v. Rose,* 254 Neb. 1, 573 N.W.2d 765 (1998); *McAllister v. Nebraska Dept. of Corr. Servs.,* 253 Neb. 910, 573 N.W.2d 143 (1998).

Section 43-291 provides in part: "Facts may also be set forth in the *original petition*, a supplemental petition, or motion filed with the court alleging that grounds exist for the termination of parental rights." (Emphasis supplied.) Under this section, a termination proceeding may be commenced by filing an "original petition." Such language is inconsistent with the majority's holding that parental rights may be terminated only when a juvenile action has been previously commenced in which a child has been adjudicated a juvenile within the meaning of § 43-247. To hold that termination of parental rights may occur only following an adjudication renders the "original petition" language in § 43-291 meaningless. It is well established that in construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998); *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997).

Section 43-292 sets forth the grounds for termination. It states that parental rights may be terminated when the court finds such action is in the best interests of the juvenile and one of the following conditions exists:

(1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition;

(2) The parents have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection;

(3) The parents, being financially able, have willfully neglected to provide the juvenile with the necessary subsistence, education, or other care necessary for his or her health, morals, or welfare or have neglected to pay for such subsistence, education, or other care when legal custody of the juvenile is lodged with others and such payment ordered by the court;

(4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated

lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the juvenile;

(5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency and there are reasonable grounds to believe that such condition will continue for a prolonged indeterminate period;

(6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; or

(7) The juvenile has been in an out-of-home placement for eighteen or more consecutive months and the parents have failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Department of Health and Human Services or other designated agency.

Only subsections (6) and, arguably, (7) appear to require a prior determination under § 43-247. Subsection (6) explicitly requires a prior adjudication under § 43-247(3)(a) prior to termination for failure to correct the conditions leading to such an adjudication. Subsection (7) implicitly seems to require a prior adjudication based on the language regarding court-ordered services being provided to the parents. In contrast, subsections (1) through (5) do not refer, explicitly or implicitly, to the necessity of a prior adjudication.

As the meaning of the above statutes is unambiguous, we may not resort to statutory interpretation which would include a review of legislative history. The language of the unambiguous statute is controlling.

I do not believe that Nebraska statutes require an adjudication prior to the termination of parental rights under subsections (1) through (5) of § 43-292. Other states with similar statutes have held that an adjudication is not necessary in all cases prior to termination of parental rights. See, e.g., *Matter of R.J.W.*, 789 P.2d 233 (Okla. 1990); *State, Dept. of Human Services v. Ousley*, 102 N.M. 656, 699 P.2d 129 (N.M. App. 1985). There are situations, such as the one before us, where it is needless to

require that a juvenile be adjudicated prior to the termination of parental rights. It must be remembered that the paramount concern in this case is the best interests of the children. The requirement of a prior adjudication is a procedural hurdle not required by statute that forces the children to linger in the juvenile system for longer than is necessary.

In the case before us, I would conclude that regarding Jonathan, Jasmine, and Devon, the commencement of termination proceedings by the filing of an original petition seeking termination of parental rights under § 43-292(2) and (4) was proper. I would also conclude that there was sufficient evidence to terminate Mitzi's parental rights regarding Jonathan, Jasmine, and Devon pursuant to § 43-292(2) for the same reasons justifying the termination of parental rights as to Joshua, as set forth in the majority opinion. Mitzi's pattern of conduct is relevant as to all four children, although Jonathan and Jasmine were not in the juvenile system for the entire time and Devon was not born until August 16, 1996. See *In re Interest of Theodore W.*, 4 Neb. App. 428, 545 N.W.2d 119 (1996). There is no dispute that Mitzi's conduct justifies termination of her parental rights. The majority's holding merely delays the inevitable.

Absent the prior holding of this court in *In re Interest of Joelyann H.*, 6 Neb. App. 472, 574 N.W.2d 185 (1998), I would conclude that an adjudication was not necessary prior to the termination of Mitzi's parental rights pursuant to § 43-292(2). However, given the holding in *In re Interest of Joelyann H., supra*, I must concur.