IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF KAMERON R.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF KAMERON R., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
ROBERT R., APPELLANT.

Filed December 9, 2014.    No. A-14-530.

Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Jonathan Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, Christopher M. Reid, and Meridith Wailes, Senior Certified Law Student, for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Robert R. appeals the May 16, 2014, order of the separate juvenile court of Lancaster County, which granted the State's motion for termination of his parental rights pursuant to Neb. Rev. Stat. § 43-292 (Cum. Supp. 2014). For the reasons that follow, we affirm.

## BACKGROUND

Kameron R. was born in April 2011 to Amanda B. and Robert. Robert signed an acknowledgment of paternity on April 7, 2011.

In April 2012, Kameron was placed by Amanda with an acquaintance and was later placed under the care of Kameron's maternal grandparents. During the period between April and November 2012, Amanda and Robert were voluntarily working with DHHS. A motion for

- 1 -

temporary custody was filed in the separate juvenile court of Lancaster County due to allegations of substance abuse by both Amanda and Robert, specifically the use of methamphetamine. Kameron was formally placed in the temporary legal custody of DHHS on or about November 5, 2012.

Robert entered a plea of no contest to the allegations made with respect to him in the amended petition on January 4, 2013. Amanda also entered a plea of no contest on January 4 and has since relinquished her parental rights to Kameron. On January 9, the court's order found that Kameron was a child as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) and that Kameron was a child who was in a situation "dangerous to life or limb or injurious to his health or morals," as Robert had failed to provide Kameron with safe and stable housing.

On February 7, 2013, a dispositional hearing was held. Robert did not appear, but he was represented by counsel. The court approved a plan affording Robert reasonable rights of supervised parenting time and contact with Kameron. The plan required Robert to establish a safe and stable residence and to establish employment or other legal means of support for himself and the child. The plan also required Robert to participate in a substance abuse evaluation arranged by DHHS and to follow any recommendations of the evaluation unless he requested a hearing to address the recommendations. The court directed Robert to refrain from the use of alcohol or controlled substances and to submit to random drug testing as directed by DHHS. Reviews of Robert's progress under the plan were held on May 29 and August 26, 2013. The State filed a motion to terminate Robert's parental rights on March 10, 2014. The petition alleged that statutory grounds for termination existed under § 43-292(2) and (7) and that termination would be in the child's best interests.

A hearing was held before the juvenile court on May 9, 2014, regarding the State's motion to terminate. Robert testified that he has been incarcerated for the majority of the time between Kameron's removal from his parents' custody in November 2012 and the date of the hearing. Robert reported living with his mother between November 2012 and March 2013, during which time he had supervised and monitored parenting time with Kameron arranged by DHHS. Robert acknowledged that he did not have his own residence and that he did not maintain employment for more than a couple of months during that period. He testified that he started using drugs again and stealing and that he was jailed in Missouri in March 2013. He was extradited back to Nebraska for additional theft charges in Nebraska. Robert was in jail continuously between March and late October 2013. During that time, he had no contact with Kameron.

Robert was released from jail in late October 2013, and a therapeutic visit was arranged with Kameron on November 11. It was defined as a therapeutic visit because Kameron had not seen Robert for approximately 6 months. Robert was unable to attend the next therapeutic visit, scheduled for the following week, because he relapsed and returned to jail on November 15 on theft and possession of controlled substances charges. Robert has not seen Kameron since the first therapeutic visit.

DHHS arranged for two different substance abuse evaluations for Robert, which were performed while he was in jail. Robert has been incarcerated continuously since November 2013, except for the period when he was released to participate in residential treatment for substance abuse through a detoxification program.

Robert was admitted to the detoxification program on March 19, 2014, and was discharged on April 21 without satisfactorily completing the program. He testified that he was discharged for having an unapproved visitor. The detoxification program's discharge form indicates Robert "was observed using a phone without permission, was seen smoking while out with peers on a treatment activity, was observed displaying inappropriate behaviors with girlfriend during visiting hours and had an unapproved visitor who had to be told several times that he couldn't visit." The form also indicates that Robert's progress in addressing the listed problems at the point of his discharge was "fair" and that he was at a high risk for "continued use/relapse potential." It was recommended that Robert complete a residential care program and enter a halfway house to help maintain sobriety.

At the time of trial, Robert was awaiting sentencing on a felony theft by deception and/or felony level shoplifting charges and faced a sentence of up to 5 years' incarceration. Between 2004 and 2010, Robert had also served various terms of incarceration in both Missouri and Nebraska correctional facilities.

Kara Hoeman, a child and family services specialist with DHHS, testified that it was DHHS' opinion that it was in Kameron's best interests to terminate Robert's parental rights. She noted that there had been minimal participation by Robert in this case, that he was incarcerated for the majority of Kameron's life, and that Kameron had never resided with Robert. She noted that Robert only had a "handful" of visits with Kameron and that Robert did not take appropriate steps toward maintaining sobriety by participating in Alcoholics Anonymous and/or Narcotics Anonymous while incarcerated. She testified that it was her opinion that Kameron deserved the permanency of a stable home.

The order of the juvenile court was filed May 16, 2014. The court found the allegations contained in the motion for termination of parental rights were proved by clear and convincing evidence. The juvenile court observed that Robert had continued to struggle with "leading a law-abiding life and to make sincere and disciplined efforts to maintain his sobriety and abstinence from controlled substances." The court determined that Kameron should not be forced to remain in the limbo of foster care awaiting his father's uncertain and tenuous commitment to change and that termination of Robert's parental rights was in Kameron's best interests.

Robert timely appealed the order of the juvenile court.

## ASSIGNMENTS OF ERROR

Robert asserts the State failed to prove by clear and convincing evidence that (1) Robert had substantially and continuously or repeatedly neglected or refused to give Kameron necessary parental care and protection, (2) that it is in the child's best interests for Robert's parental rights to be terminated, and (3) that failure to terminate Robert's parental rights would subject Kameron to future harm.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014). When the evidence is in conflict, however, an appellate court may

give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

ANALYSIS

*Statutory Grounds for Termination.*

In the Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Robert's parental rights to Kameron, the juvenile court found that Robert substantially and continuously neglected to give the child necessary parental care and protection (§ 43-292(2)) and that the child had been in an out-of-home placement for 15 or more months of the most recent 22 months (§ 43-292(7)).

Robert does not contest the juvenile court's finding that grounds for terminating his parental rights existed under § 43-292(7). Having reviewed the evidence, we find it is clear that Kameron has been in an out-of-home placement for the majority of his short life. Kameron's mother placed the child in out-of-home care in April 2012, and Kameron was formally placed in the temporary legal custody of DHHS on or about November 5. The record shows Kameron has never resided with Robert. Our de novo review of the record shows that grounds for termination of Robert's parental rights under § 43-292(7) were proved by clear and convincing evidence.

Robert does assert the State failed to prove by clear and convincing evidence that Robert had substantially and continuously or repeatedly neglected and refused to give Kameron necessary parental care and protection, as defined by § 43-292(2). However, having found at least one statutory ground was proved by clear and convincing evidence, we need not address this assignment of error. Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the child's best interests. *In re Interest of Athina M.*, 21 Neb. App. 624, 842 N.W.2d 159 (2014).

*Best Interests.*

A juvenile's best interests are the primary consideration in determining whether parental rights should be terminated pursuant to § 43-292. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

Robert asserts the State failed to prove by clear and convincing evidence that termination of his parental rights is in Kameron's best interests. He admits that he is not currently in a position to care for Kameron, due to his continued incarceration, and asserts that he has not had the opportunity to develop a relationship with his child under the current circumstances. He asserts he should be afforded the opportunity to "overcome his addictions, establish a parental relationship with Kameron, and demonstrate that he can provide a safe and stable home for him upon his release from incarceration and successful treatment for his drug and alcohol addiction."

Nebraska courts have acknowledged that evidence of a parent's lifestyle, which includes a pattern of illegal drug use and dependence may establish substantial and continuous or repeated neglect under the statutes. *In re Interest of Joshua M. et al.*, 7 Neb. App. 872, 587 N.W.2d 131 (1998). It has also been accepted that incarceration alone is not a basis of termination of parental

rights. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). However, the juvenile court may consider a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). The Nebraska Supreme Court has stated that although incarceration may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. *Id.*

Robert testified that he participated in supervised or monitored visitation with Kameron, arranged by DHHS between November 2012 and March 2013. Robert was incarcerated in March 2013 and did not have any contact with the child until he was released from incarceration in October 2013. Weekly therapeutic visits were set up, but only one occurred before Robert was reincarcerated on separate charges. The evidence shows Robert was released from incarceration in 2014 to participate in a drug treatment program but was unable to follow the program's rules. He was discharged from the program and returned to jail.

At the time of the hearing, Robert was awaiting sentencing on additional charges of felony theft by deception and/or felony level shoplifting; he faced a sentence of up to 5 years' incarceration.

DHHS arranged for two drug dependency evaluations, and it was recommended that Robert enter a drug and alcohol treatment program for a period of between 90 and 180 days after he is released from incarceration. It was also recommended that after completing a treatment program, Robert should enter a halfway house for a period of at least 6 months to help him maintain his sobriety.

There is no dispute that Robert has a drug and alcohol dependency that needs to be addressed. There is also no dispute that Robert has voluntarily engaged in a pattern of criminal behavior that has prevented him from meaningfully participating in Kameron's life, and he has been unable to successfully complete a treatment program to address his dependency issues.

Hoeman testified that DHHS makes recommendations for permanency based upon the case history, the length of time the child has been out of the home, and the progress the parents have made. She testified that Robert has had "minimal participation" in this case, Kameron has never resided with Robert, and at the age of three, Kameron has only had a "handful" of visits with his father. She testified that Kameron deserves permanency and a stable home and that it is DHHS' position that termination of Robert's parental rights is in Kameron's best interests.

The appellate courts of Nebraska have repeatedly cautioned that children cannot, and should not, be allowed to linger in foster care while waiting to see if the parent will mature. *In re Interest of Chloe C.*, 20 Neb. App. 787, 835 N.W.2d 758 (2013). Similarly, where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights. *Id.* In considering the issue of whether it is in the best interests of the child for the court to terminate parental rights, it is important to remember that the law does not require perfection of a parent. *Id.* Instead the court should assess whether the parent has made continued improvement in parenting skills and whether a beneficial relationship has been established between the parent and the child. *Id.*

Though it appears that Robert desires to be involved in Kameron's life, he has been unable to put himself in a position to be able to parent Kameron or even maintain regular contact due to his continued incarceration for various criminal offenses. There is no evidence to suggest

Robert has made any progress in his parenting skills, and there is very little evidence that he has established or maintained a beneficial relationship with Kameron. Upon our de novo review, we find the State proved by clear and convincing evidence that termination of Robert's parental rights is in Kameron's best interests.

*Future Harm.*

Robert asserts the State failed to prove by clear and convincing evidence that failure to terminate Robert's parental rights would subject Kameron to future harm. He cites *In re Interest of Carrdale H.*, 18 Neb. App. 350, 352, 781 N.W.2d 622, 624 (2010), in which this court stated, with respect to the adjudication of a minor: "[T]he State need not prove that the juvenile has actually suffered harm but must establish that without intervention, there is a definite risk of future harm." Robert asserts there was no evidence offered by the State showing that Kameron was at a definite risk for harm if Robert's parental rights were to remain intact.

However, the current order only pertains to termination pursuant to § 43-292, not adjudication under § 43-247(3)(a). As discussed in further detail above, the Nebraska statutes and case law require clear and convincing evidence that one or more of the statutory grounds for termination existed and that termination was in the child's best interests. There is no requirement in § 43-292 to prove that the child is at risk for future harm in a termination proceeding.

It is well established that orders adjudicating juveniles are final, appealable orders. *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003). The juvenile court adjudicated Kameron on January 9, 2013, finding that Robert failed to provide safe and stable housing for Kameron and that the child was at risk for harm. If Robert wished to appeal that order, he should have done so in a separate appeal within 30 days of the adjudication order. The court's adjudication of the child is not appealable as part of an appeal of the order terminating Robert's parental rights. This assignment of error is without merit.

CONCLUSION

We find the trial court did not err in finding the State proved by clear and convincing evidence that one or more of the statutory grounds for termination existed and that termination of Robert's parental rights was in Kameron's best interests. We find the State was not required to prove that Kameron was at risk for harm to satisfy the requirements for termination of Robert's parental rights.

AFFIRMED.